Smith *v.* Wilcox.

———•●○———

Smith and others *vs.* Wilcox.

A contract to publish an advertisement in a newspaper issued on *Sunday*, is an agreement to do an act prohibited by the statute; and the price stipulated for the service cannot be recovered in any court.

MOTION by the plaintiff, for judgment upon a verdict, in his favor, at the circuit.

Roosevelt, J. In this case, the jury having rendered a verdict for the plaintiff, judgment upon it, according to the new code, was reserved for the further consideration of the court, on the single question whether a contract, however clearly proved, and however obligatory in honor, to advertise in a Sunday paper, can, in this state, be the subject of a legal action.

The Sunday act (1 *R. S.* 675) declares that " there shall be no servile labor or working on that day, excepting works of necessity and charity," and nó exposing " to sale of any wares, merchandise, &c., except meats, milk and fish." Sunday papers, it is said, are usually " worked off" on Saturday night,

sometimes before and sometimes after 12 o'clock. The printing, therefore, does not necessarily involve a breach of the law ; and there is no proof that in this particular case there was any breach in fact, or that any was contemplated. But to print merely, is not to advertise. Publication is—and is always understood to be—essential, and the more extensive the publication the more valuable to the advertiser. How, then, is a newspaper to be published on a Sunday, except by a sale on a Sunday? Can we presume, against all known usage, that it may be given away? and that the men or boys who aid in its circulation perform their labor as an act of " charity?" Both parties, it seems to me, in making this contract did contemplate, and must have contemplated, that the paper was to be issued on Sunday, to be distributed on Sunday, to be sold on Sunday, and to be read on Sunday. And although reading—unless it be a very dull paragraph, a thing not to be presumed— may not be an act of " servile labor," issuing and distributing certainly are. In the case of *Watts* v. *Van Ness*, (1 *Hill*, 76,) it was held that the usual occupation of a clerk in an attorney's office, is a species of " servile labor," the performance of which on Sunday is unlawful ; and that a bargain, consequently, for extra compensation for such " service," could not be enforced by the clerk. And how, as a mere question of labor, can we distinguish the carrying of a newspaper, from the copying of a law paper? Both certainly are labor, and, in the sense of the statute, both are servile labor. A magistrate, it would seem, on one occasion fined a person for " circulating a memorial to the legislature" on a Sunday, and the supreme court, in effect, ratified his act. (21 *Wend*. 552.) And where a purchaser of a house in Connecticut, complained that he had been cheated in his bargain, the court said it was a sufficient answer to his claim that the law of that state prohibited " all secular business on Sundays." (14 *Wend*. 248.)

A newspaper, moreover, is clearly an article of merchandise. Admitting, then, that the crying and carrying of a newspaper about the streets were a mere pastime, and not a " work or labor," its sale, notwithstanding, in that manner would be an unlawful

Smith *v*. Wilcox.

violation of the prohibition which declares that "no person (with the exceptions above referred to) shall expose to sale any merchandise, wares, fruit, herbs, goods or chattels on Sunday." It is this exposure to sale and consequent disturbance of the quiet of the day, and not the sale itself, which in this state constitutes the illegality of the transaction. And it was accordingly held in the case of *Boynton* v. *Page*, (13 *Wend.* 425,) that a transfer of personal property, in this state, if made privately, although on a Sunday, was valid and passed a good title, notwithstanding the prohibition. In this, our legislation, as will be seen, differs from, and is less rigid than that of our sister state. Whether in a religious point of view the distinction between selling on a Sunday and exposing for sale on a Sunday be a sound one, it is not my purpose nor my province to inquire. The business of the judiciary is to expound and apply, and not to make laws. The prohibition of merchandising, as it was called, on Sunday, is as old in our law as the statutes of King Althelstan. In the time of Henry the sixth no fair or market, it was enacted, should be held on that day, except during harvest, on pain of forfeiting the goods exposed to sale ; and in the reign of Charles the second—a monarch not particularly distinguished for religious austerity—the prohibition was extended to "all worldly labor," and all "exposing of goods to sale," except meat and milk. Bakers—rather a strange association, according to our present ideas—were permitted subsequently, and in this we see the constitutional tendency of some of our ancestors, to dress dinners on a Sunday, as a work of necessity. But although the preparation of food for the body was thus excepted, no similar exemption was extended to the preparation of food for the mind. Indeed, in any view of religious obligation, it would be difficult to contend that the reading of advertisements in a Sunday newspaper, or aiding a person to do so, is a work of either necessity or charity. The mind, certainly, on that day requires no such sustenance. And even as a mere matter of taste, it must be admitted that common business advertisements of buying and selling are a very unsuitable outfit for a "feast of reason." Six days, at all events,

of such diet are enough. Thought perpetually running in one channel, like matrimony in one family, dwarfs the intellect. It is rather, therefore, a work of charity in such cases to withhold than to give. Abstinence, not sustenance, is what is needed.

It is a strange mode, it will be said, to support religion by sheltering bad faith. Laws involving public policy can seldom be made effectual in any other way. The gaming law, the usury law, the smuggling law and other enactments of like character, are familiar illustrations of the principle that he who sets the law at defiance can claim no assistance from the law. The law in such cases generally frowns on both parties, and aids neither, unless it be to wrong the other.

My conclusion, then, is, that the contract made by the plaintiffs to publish the defendant's advertisement in a Sunday paper was a contract to do an act prohibited by the statute, and that the price, therefore, stipulated to be paid for the service, whatever may be the moral obligation, cannot be recovered in any court of this state.

Judgment for the defendants.

[NEW YORK SPECIAL TERM, February 12, 1855. *Roosevelt*, Justice.]