### MOORE v. OWEN et al.

(Supreme Court, Special Term, Monroe County.    February 24, 1908.)

1. SUNDAY—STATUTORY PROVISIONS—AMUSEMENTS—SHOWS NOT SPECIFICALLY MENTIONED.

The statutory construction law provides that provisions of a law which are statutory re-enactments of provisions of a prior law, which it repeals, shall be construed as a continuation of such provisions, and not as a new enactment. 1 Rev. St. (1st Ed.) pt. 1, c. 20, tit. 8, § 70, prohibited servile labor, with certain exceptions, and this provision remained until the adoption of the Penal Code in 1881 (Laws 1881, p. 1, c. 676). Laws 1860. p. 999, c. 501, made it unlawful to exhibit on Sunday in any building, etc., within the city and county of New York, any tragedy, etc., or any other entertainment of the stage. Pen. Code 1881, § 263, prohibited all servile labor on the first day of the week, excepting works of necessity or charity. Pen. Code, § 277, made Laws 1860, p. 999, c. 501, applicable to the entire state. In 1883 the word "servile" was dropped from section 263, and section 277 was amended by omitting the words "or any other entertainment of the stage," and by inserting certain other forms of exhibitions, though there was no provision legalizing entertainments of other forms on Sunday. Before the Penal Code the punishment for Sabbath breaking was $1 for each offense. By the act of 1860 Sabbath breaking by the theatrical exhibitions mentioned was punishable by a $500 penalty and revocation of license, and the same penalties were retained in Pen. Code, § 277, but other forms of Sabbath breaking were made misdemeanors punishable by small fine and imprisonment, with an increased penalty for a second offense. Held, that Pen. Code, § 277, was merely intended to increase the penalty in the cases covered thereby, and hence it does not prevent the application of the other sections relating to Sabbath breaking to Sunday performances in a theater or public hall, and section 263 prohibiting all labor on Sunday applies to prohibit public entertainments in theaters on Sunday which involve labor, unless within the exception of works of necessity, etc.

2. SAME.

Since 1883 Pen. Code, § 265, has prohibited all shooting, etc., and exercises or shows on the first day of the week. By the Penal Code Sabbath breaking, other than particular theatrical performances specified in section 277 thereof, was made a misdemeanor punishable by a certain penalty, and under section 277 the penalty for conducting theatrical exhibitions, etc., specifically mentioned, was placed at $500, with a revocation of any license previously obtained. Held that, under section 277, all public shows mentioned therein were prohibited on Sunday under the penalty therein prescribed, and all other public shows, whether in or out of doors, were prohibited by section 265, under the penalty for Sabbath breaking in general.

3. SAME—GENERAL POLICY OF THE LAW—SECULAR OCCUPATIONS.

The legislation of the state from earliest times discloses the policy to prevent secular occupations on Sunday, and not to discriminate between one occupation and another, with the exceptions in favor of drug stores, etc., being for the benefit of the public, and not as a favor to those engaged in the occupations.

4. SAME—LEGISLATIVE AUTHORITY TO REGULATE OBSERVANCE.

It is competent for the Legislature to regulate the observance of Sunday.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Sunday, § 2.]

5. SAME—CITY ORDINANCES—EFFECT—MOVING PICTURE SHOWS.

Where a city ordinance provides that no one shall carry on any business therein named without procuring a license as provided by the ordinance, and among the occupations mentioned is that of showmen, which the ordinance specifically construes to cover the exhibition of any public show of any kind, and the ordinance prohibited showmen from giving any theatrical representation or other show on Sunday, and provided penalties, the giving of a moving picture show on Sunday is in violation of the ordinance, which has the same force as a statute within the corporate limits of the city, since it is competent for the common council to regulate and control the licensing of theaters and public shows.

6. INJUNCTION—PROCEEDINGS WHICH MAY BE RESTRAINED—CRIMINAL PROSECUTIONS.

The police department cannot be enjoined from interfering with plaintiff in the giving of a moving picture show on Sunday, since, if he has any remedy, it is in the courts of law to defend himself when arrested, and to pursue his remedy for damages for improper interference with his personal or property rights, since a court of equity will not interfere to restrain the regular and orderly attempts of public officers to enforce the criminal law, except in extreme cases, where it is necessary to prevent grave injustice or irreparable injury.

Action by James H. Moore against Charles S. Owen, individually and as commissioner of public safety of the city of Rochester, and others, to restrain defendants from closing or attempting to close plaintiff's opera house on any Sunday evening, or from interfering with his presenting in the theater on Sunday moving picture exhibitions, etc. On motion for injunction pendente lite. Motion denied.

Motion by plaintiff for an injunction pendente lite to restrain the defendants, as the chief executive officers of the police department of the city of Rochester, from closing or attempting to close the theater of the plaintiff, known as the "Cook Opera House," on any Sunday evening, and from interfering with the plaintiff presenting in said theater on Sunday exhibitions of moving pictures with or without oral lectures connected therewith, stereopticon pictures with songs, sacred and secular, explanatory thereof, and descriptive instrumental music to accompany said moving pictures and songs.

James M. E. O'Grady, for the motion.
Wm. W. Webb, Corp. Counsel, opposed.

FOOTE, J. The plaintiff is the proprietor of the theater located in the city of Rochester known as the "Cook Opera House." He is engaged in the business of furnishing entertainment for his patrons, and claims the right to continue that business on Sunday, provided the nature of the performance or entertainment is not prohibited by name in section 277 of the Penal Code. That section is as follows:

"The performance of any tragedy, comedy, opera, ballet, farce, negro minstrelsy, negro or other dancing, wrestling, boxing with or without gloves, sparring contest, trial of strength, or any part or parts therein, or any circus, equestrian, or dramatic performance or exercise, or any performance or exercise of jugglers, acrobats, club performances or ropedancers, on the first day of the week is forbidden."

This section had its origin in chapter 501, p. 999, Laws 1860, which act was limited in its application to the city of New York. At the time of the adoption of the Penal Code in 1881 it was incorporated therein and made applicable throughout the state as the last section of chapter 1, tit. 10, and there were brought into that chapter all the other existing penal statutes with reference to the observance of the Christian Sabbath. If the plaintiff is right in his claim that it is lawful for him to give in his theater the entertainment of moving pictures, etc., described in his motion papers, on Sunday, because it is not one of the entertainments referred to by name and prohibited in section 277 of the Penal Code, then it would seem that prior to the adoption of this section in 1881 there was no statutory restriction whatever against the opening of theaters and places of amusement on Sunday and giving therein any of the entertainments now expressly prohibited by that section, except only in the city of New York, and that prior to the act of 1860 it was also lawful in that city.

An examination of the statutes in force prior to 1881 in respect to Sabbath observance is necessary, in order to ascertain how far the enactment of section 277 of the Penal Code was intended to effect a change in the existing laws. Going back no further than the adoption of the first Revised Laws in this state in 1813, we find (2 Van Ness & Woodworth Revised Laws, p. 193) the previous statutes embodied in one act entitled "An Act for Suppressing Immorality," being chapter 24 of the Revised Laws. The provisions of this statute, so far as material here, were as follows:

"That there shall be no traveling, servile laboring or working (works of necessity and charity excepted), shooting, fishing, sporting, playing, horse-racing, hunting, frequenting of tippling-houses, or any unlawful exercises or pastimes by any person or persons within this state, on the first day of the week commonly called Sunday * * * and that no person shall expose to sale, any wares, merchandise, fruit, herbs, goods or chattels, except small meat and milk and fish, before nine of the clock in the morning."

On the adoption of the First Revised Statutes in 1828, the Sunday laws were re-enacted in the following form (1 Rev. St. [1st Ed.] pt. 1, c. 20, tit. 8, p. 675, §§ 70, 71):

"Sec. 70. There shall be no shooting, hunting, fishing, sporting. playing. horse-racing, gaming, frequenting of tippling-houses, or any unlawful exercises or pastimes, on the first day of the week called Sunday; nor shall any person travel on that day, unless in cases of charity or necessity * * * nor shall there be any servile laboring or working on that day, excepting works of necessity and charity, unless done by some person who uniformly keeps the last day of the week, called Saturday, as holy time, and does not labor or work on that day, and whose labor shall not disturb other persons in their observance of the first day of the week as holy time.

"Sec. 71. No person shall expose to sale, any wares, merchandise, fruit, herbs, goods or chattels, on Sunday, except," etc.

This form of the statute remained practically unaltered until the adoption of the Penal Code in 1881 (Laws 1881, p. 1, c. 676). The statutes were then recast in form, and subdivided into the following sections:

"Sec. 259. The first day of the week being by general consent set apart for rest and religious uses, the law prohibits the doing on that day of certain acts

hereinafter specified, .which are serious interruptions of the repose and religious liberty of the community."

"Sec. 262. The following acts, as explained in the next six sections are those forbidden to be done on the first day of the week, except in a work of necessity or charity: (1) Servile labor. (2) Public sports and shows. (3) Trades, manufactures, or mechanical employments. (4) Public traffic. (5) Serving process.

"Sec. 263. All manner of servile labor, on the first day of the week, is prohibited, excepting in works of necessity or charity."

"Sec. 265. All shooting, hunting, fishing, playing, horse racing, gaming or other public sports, exercises, pastimes or shows, upon the first day of the week, and all noise disturbing the peace of the day, are prohibited.

"Sec. 266. All trades, manufactures and mechanical employments upon the first day of the week are prohibited.

"Sec. 267. All manner of public selling, or offering, or exposing for sale publicly, of any commodities upon the first day of the week is prohibited, except that meats, milk and fish may be sold at any time before nine o'clock in the morning, and except that food may be sold to be eaten upon the premises where sold, and drugs, medicines and surgical appliances may be sold at any time of the day."

Then follow several sections relating to serving of process on Sunday, attempting by threats, etc., to compel certain religious beliefs, disturbing religious meetings, processions, and parades, and finally section 277 is added as the closing section of the chapter in reference to theatrical and other performances on Sunday. In 1883 section 263 was amended (Laws 1883, p. 541, c. 358), and has continued to the present day in form as follows:

"Sec. 263. All labor on Sunday is prohibited, excepting the works of necessity or charity. In works of necessity or charity is included whatever is needful during the day for the good order, health or comfort of the community."

The same year section 265 was amended by omitting the word "pastimes." The same year section 262 was repealed. There has been no other important change in the Sunday statute as originally enacted in the Penal Code of 1881, with the single exception relating to section 277, which will be referred to later. At the time of the enactment of the Penal Code the previous statutes which were revised and embodied in that Code were repealed.

The contention of the plaintiff now is that, because of the provisions of section 277 of the Penal Code prohibiting certain theatrical performances on Sunday, that section should be held to embody the whole law on the subject of Sunday entertainments in theaters, and that none of the other sections should be deemed to apply. There is a well-settled rule of statutory construction, which has been embodied in the statutory construction law in the following form:

"The provisions of a law repealing a prior law which are substantially re-enactments of provisions of the prior law shall be construed as a continuation of such provisions of such prior law, and not as new enactments."

Under this rule the sections of the Penal Code above quoted, which are substantially re-enactments of previous statutes, must be construed as continuing those statutes in force, and not as new statutes. This rule has an important bearing upon the construction of these sections of the Penal Code. Had there been no prior statutes of a similar character, and had the Legislature formulated these sections as new statutes, it would be proper to assume or infer that a section treating spe-

cially of theatrical performances or exhibitions and mentioning by name nearly every form of such exhibition then known was intended to cover the whole subject of the prohibited use of theaters on Sunday, in the absence of any direct reference to theaters in the other sections, and these sections of the Penal Code so construed would, no doubt, render it lawful to give any performance on Sunday in a theater not answering to the description of any of those named in section 277 as prohibited by that section. I think, however, that such construction should not be adopted if in the previous sections there is incorporated any provisions of an older statute which is thus continued in force, and which, as it existed prior to the adoption of section 277, did prohibit an exhibition or performance in a theater on Sunday which would not fall within the prohibition of section 277.

This brings us to the question as to whether it was lawful for the proprietor of a theater to continue his business on Sunday prior to 1881, when section 277 first came into force. The other statutes previously in force and continued and re-enacted in the other sections of the Penal Code above quoted were as follows (2 Rev. St. Banks & Bros. [6th Ed.] pt. 1, c. 22, tit. 8, p. 928, § 84):

"There shall be no shooting, hunting, fishing, sporting, playing, horse-racing, gaming, frequenting of tippling-houses, or any unlawful exercises or pastimes, on the first day of the week called Sunday * * * nor shall there be any servile laboring or working on that day, excepting works of necessity and charity, unless done by some person who uniformly keeps the last day of the week, called Saturday, as holy time, and does not labor or work on that day, and whose labor shall not disturb other persons in their observance of the first day of the week as holy time."

If this statute has no application to theaters, then it was always lawful prior to 1881 for the proprietor of a theater in Rochester to continue his business on Sunday the same as on a week day, and to give on Sunday any show or form of entertainment which could lawfully be given on a week day unless restrained by some local ordinance of the common council. I apprehend that, if this statute was capable of such a construction, Sunday theaters in this state would have been the rule, and not as they always have been, the exception. A diligent examination has failed to disclose a single reported decision of the courts in this state prior to 1881, where the proprietor of any theater or public hall was prosecuted for a supposed violation of this statute for continuing his business on Sunday. This may be due to the fact that in many, if not all, of the cities, municipal ordinances prohibited it. Certainly, the fact is that it has been the common understanding of the people, as well as the bar, that the state statutes did not permit theatrical performances on Sunday. It would have been offensive to the religious sentiments of the community, and entirely out of harmony with the Christian Sabbath as one of our civil institutions, inherited from our ancestors who settled this country and formed our government, and who brought it with them as an already long-existing institution. One of its leading features was that all the people should abstain from pursuing their ordinary week-day occupations on Sunday, and that no labor, except in cases of necessity and for charity, should be continued on that day, but that it should be given up to rest and

religious observance. No performance of this kind can be carried on without labor or working, and I think, if the courts had been called upon to construe this statute prior to 1881 in its application to the continuation by the proprietor of a theater of his business on Sunday, they would have held that it violated the provision against servile labor or working on that day. All the actors and performers work for pay, and are employed to do the work which they do, which is to them their ordinary and regular form of labor. But, if the word "servile" prevents its application to work done by actors and performers, still such a performance cannot be given without the aid of manual labor performed by some one. This prohibition against labor and working was continued in the Penal Code in section 263, and, under the rule that it should be construed as the continuation of an old statute rather than the adoption of a new one, it continued to be the same statute, and must receive the same construction and apply to the same forms of labor that it could properly have been construed to apply in its original form. But in the year 1883 the word "servile" was dropped out of this section, and it now reads:

"All labor on Sunday is prohibited, excepting the works of necessity or charity. In works of necessity or charity is included whatever is needful during the day for the good order, health or comfort of the community."

As this was an old statute, its proper construction is not to be limited because the Legislature saw fit to adopt a later statute, specially prohibiting certain theatrical performances by name. Nowhere has it been provided that theatrical entertainments other than those specially named in section 277 of the Penal Code shall be lawful on Sunday. Selling tickets to a theater, printing a newspaper, serving as a police magistrate, serving as an attorney's clerk, giving of theatrical exhibitions have all been held to be "laboring" within the intent and meaning of that term as used in the Sunday laws. Quarles v. State of Arkansas, 55 Ark. 10, 17 S. W. 269, 14 L. R. A. 192; Smith v. Wilcox, 19 Barb. 581, s. c. 25 Barb. 341; Palmer v. Mayor, etc., 2 Sandf. 318; Watts v. Van Ness, 1 Hill. 76; Lindenmuller v. People, 33 Barb. 548.

This leads to a consideration of the origin of section 277, and of how far, if at all, it must be given effect to vary or control the construction of previously existing statutes continued in the Penal Code. It had its origin in chapter 501, p. 999, Laws 1860, an act entitled: ·

"An act to preserve the public peace and order on the first day of the week, commonly called Sunday."

The first section provides that it shall not be lawful to exhibit on Sunday in any building, garden, concert room, or other room or place within the city and county of New York any tragedy, comedy, etc., or any other entertainment of the stage. Section 2 provides that any person offending against the act or aiding in such exhibition by advertisement or otherwise, and every owner or lessee of any building who lets the same for the purpose of any such exhibition, or assents to its use for the same, shall be guilty of a misdemeanor, and, in addition to the punishment provided by law, shall be subjected to a penalty of $500, which penalty the "Society for the Reformation of

Juvenile Delinquents" is authorized to sue for and collect for its bene-
fit; also, that every such exhibition shall of itself vacate, annul, and
render void any license previously obtained by the manager. This
statute was incorporated in the Penal Code in 1881 in section 277
without material change except that the clause limiting its application
to the city of New York was stricken out, and the overseers of the
poor in other cities and towns within the state of New York were
authorized to prosecute for the special penalty imposed. In 1883 the
section was amended by omitting the words "or any other enter-
tainment of the stage," and by inserting the words, "wrestling, box-
ing with or without gloves, sparring contest, trial of strength, and
club performance." Before the Penal Code the punishment prescribed
by the then existing statutes for Sabbath breaking was the forfeiture
of $1 for each offense. By the act of 1860, applicable to the city of
New York, the Sabbath breaking therein specified, consisting of the
theatrical exhibitions therein specially named, was made a misdemean-
or punishable by a penalty of $500. On the adoption of the Penal
Code, Sabbath breaking, other than the particular theatrical perform-
ances specified in section 277, was made a misdemeanor punishable
by fine of not less than $5 or more than $10, or by imprisonment in
county jail not exceeding 5 days, or both, and for a second offence
by fine of not less than $10 or more than $20 and imprisonment in
county jail not less than 5 or more than 20 days. In the difference in
the severity of the punishment may be found a reason for the adop-
tion of the act of 1860 relating to the city of New York, and in its
enlargement in 1881 in the Penal Code to apply to the whole state;
and thus may be found a reason for specifying by name the theatri-
cal performances to be subject to a greater penalty for performance
on Sunday, although at the time unlawful under the former statutes,
but subject to a much smaller penalty. It can well be understood that
the proprietor of a theater in the city of New York would hardly
have been restrained from opening his theater on Sunday, if the on-
ly penalty he incurred was the fine of $1 for each offense. I find,
therefore, in the history of these statutes a sufficient reason for hold-
ing that section 277 of the Code is not necessarily to be construed
as a legislative declaration that the other sections in reference to Sab-
bath breaking do not apply to any Sunday performance in a theater
or public hall. And I am of the opinion that section 263, which pro-
hibits all labor on Sunday, does apply to prohibit entertainments
in theaters on Sunday which involve labor, unless the entertainment
is of the character excepted in that statute as being "works of neces-
sity or charity or needful for the good order, health, and comfort of
the community." The next question is whether such entertainments
as the plaintiff wishes to give are not prohibited by section 265 of the
Penal Code. That section as it has stood since 1883 is as follows:

"All shooting, hunting, fishing, playing, horse-racing, gaming or other public
sports, exercises or shows, upon the first day of the week, and all noise dis-
turbing the peace of the day are prohibited."

It has been held in two recent opinions by justices of this court in
the city of New York that the rule for construing statutes based up-

on the maxim, "ejusdem generis" (of the same kind or nature), should be applied here, and that the exercises or shows should be held as limited to those of the same general class as are previously specified, and, as these are all performed in the open air, that the exercises or shows prohibited are only those so performed. On the other hand, a justice of this court in the Eighth district has held otherwise, and so, I am informed, have one or more of the justices of the city of Brook-lyn, although I have not had an opportunity to examine their opinions. This canon of construction is not an absolute one. It is adopted when used as an aid to ascertain the intent of the Legislature. I think if this section stood alone, and there was no other statute which was made to apply to indoor performances, there would be little reason for assuming that the Legislature did not intend by "other public sports, exercises or shows" to include public shows both in and out of doors. But the fact that section 277 has prohibited by name a large number of theatrical or other public shows has raised a doubt as to whether that section was not intended to be exclusive upon the subject of indoor performances, and section 265 to be limited to shows out of doors. The reasons heretofore suggested in reference to the greater severity of the punishment provided for in section 277 for its violation furnish an ample reason for the specification in that section of the public performances therein named, without assuming that the Legislature intended to make lawful all other Sunday performances not so named. So, I think a more reasonable inference as to the intent of the Legislature is that the public shows named in section 277 shall be prohibited on Sunday under a penalty of $500 and of the annulment of the license, and all other public shows, whether in or out of doors, are prohibited by section 265, under a penalty of a fine of not less than $5 or more than $10, or by imprisonment not exceeding five days, or by both. This view of these statutes was apparently not presented to the learned justices who considered the cases in New York City, as no reference to it is made in their opinions.

I think it may be safely said that it is the policy of this state, as disclosed by its legislation from the earliest times, that all secular occupations not necessary for the welfare of the community should be discontinued on Sunday, both on account of the character of the day and on account of the public policy involved which regards the public interest as promoted by one days' rest in seven. I think, also, that there has been shown no intent on the part of the Legislature to discriminate in this respect between one occupation and another. The exceptions in favor of drug stores, the sale of tobacco, and of newspapers and operation of railroads, etc., are exceptions, based manifestly upon the comfort and convenience of the community, and not at all as a favor to the individuals engaged in those occupations. The recent statute prohibiting the opening of barber shops on Sunday indicates that there has been no change in this public policy. I feel bound to assume that the Legislature did not intend to make an exception in favor of the theater proprietor to enable him to carry on his business on Sunday for the sole purpose of making money by simply varying the kind of exhibition produced on that day so as to

avoid one answering to the names mentioned in section 277 of the Penal Code. Nor does it alter the case that the plaintiff in his moving papers states his intention to open his theater on Sunday afternoons or evenings only. If he has a right to give an exhibition on Sunday, he has as much right to give it in the forenoon as at any other time. That it is competent for the Legislature to regulate the observance of Sunday is beyond question. Neuendorff v. Duryea, 69 N. Y. 557, 25 Am. Rep. 235; People v. Havnor, 149 N. Y. 195, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707.

But, if I am wrong in the foregoing views, there is still another reason why the plaintiff has no right to give the exhibition proposed in his theater on Sunday. Under the city charter the common council have adopted ordinances in reference to the licensing of showmen. Article 1 of these ordinances is as follows:

"Without having procured a license as required by this ordinance, no person shall carry on any business herein named within the city of Rochester."

Then follow several sections in reference to different classes of licensed occupations, followed by section 10, which is as follows:

"Of showmen, which shall be construed to cover the exhibition of any circus, theatrical representation, or public show of any kind or permitting any place to be used for such purposes."

Then follow provisions for the issuing of licenses to showmen and the fees to be paid therefor, and by article 5, § 39, it is provided that showmen shall not give any theatrical representation, circus, or other show on Sunday, and by article 7 are provided the penalties for violation. It appears from the complaint that the plaintiff is operating as a showman under a license granted pursuant to these ordinances. It is competent for the common council to regulate and control the licensing of theaters and public shows. Its ordinance within the corporate limits of the city has the same force as a statute. Village of Carthage v. Frederick, 122 N. Y. 268, 25 N. E. 480, 10 L. R. A. 178, 19 Am. St. Rep. 490. It cannot, of course, permit under its ordinances or license any performance prohibited by the public statutes of the state, but it may impose further restrictions and limitations upon the character of the performance to be licensed or to be authorized in licensed places. The plaintiff cannot lawfully carry on his business without a license under the city ordinances; and he is bound to comply with those ordinances or forfeit his license and right to do business. It follows that he cannot, under his license, violate the ordinance in respect to giving a show on Sunday, nor has he any right to restrain the police department from enforcing the ordinance in that respect.

There is still another sufficient answer to the plaintiff's application for an injunction against the police department, which is that the plaintiff's remedy, if he has one, is not in a court of equity to enjoin police from attempting to enforce the criminal law, but is rather in the courts of law, first, to defend himself when arrested charged with a breach of the criminal law and demonstrate to the tribunal having jurisdiction in criminal cases that he is not guilty; and, second, to pursue his remedy in a court of law for damages against any officer

who unlawfully and improperly interferes with his property rights, or who prosecutes him in the criminal courts from malicious or other improper motives. It must be an extreme case which would justify a court of equity in interfering by its process of injunction to restrain the regular and orderly attempts of public officers to enforce the criminal law, and the case must be one where such process is necessary to prevent a grave injustice and irreparable injury. Coykendall v. Hood, 36 Am. Dec. 558, 55 N. Y. Supp. 718. Whether a person has been guilty of criminal offense in violation of the statute cannot be determined in an equity action. Such guilt is to be determined in a common-law court by a jury, and the people, as well as the accused, have the right to have it so determined. Davis v. Am. Soc. for Prevention of Cruelty to Animals, 75 N. Y. 362; Delaney v. Flood, 183 N. Y. 323, 76 N. E. 209, 2 L. R. A. (N. S.) 678, 111 Am. St. Rep. 759.

The motion for a temporary injunction is denied, with costs.

---

## MESCHNECK v. BROOKLYN, Q. C. & S. R. CO.

(Supreme Court, Appellate Division, Second Department. March 23, 1908.)

1. CARRIERS—CARRIAGE OF PASSENGERS—PERSONAL INJURIES—ACTIONS—PRESUMPTIONS.

In an action for injuries to plaintiff while a passenger on an S. avenue car when on a bridge, it will not be presumed, in the absence of proof, that the defendant had exclusive possession of the tracks over the bridge.

2. SAME.

Where the evidence showed that plaintiff was injured in an accident while a passenger on a street car, plaintiff was entitled to invoke the doctrine of "res ipsa loquitur."

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1283–1294.]

3. TRIAL—JUDGMENT—DISMISSAL ON THE MERITS.

Where the evidence showed that plaintiff was injured while a passenger on a street car, but did not show that the car belonged to defendant, and the case was dismissed without any evidence being offered by defendant, while the suit was properly dismissed, it was error to dismiss it on the merits.

Appeal from Municipal Court, Borough of Brooklyn, Third District.