CITY OF SPRINGFIELD, Appellant, v. W. W. SMITH.—19 S. W. (2d) 1.

Court en Banc, May 25, 1929.

*Dan M. Nee, Barbour & McDavid* and *Schmook & Sturgis* for appellant.

*Sam M. Wear* and *W. D. Tatlow* for respondent.

1134

FRED L. WILLIAMS, SPECIAL JUDGE.—This appeal involves the constitutionality of an ordinance of the City of Springfield, Missouri.

Said city appealed from the judgment of the Criminal Court of Greene County, dismissing the complaint.

The complaint, which originated in the Municipal Court of said city, in substance charged that "on or about the 19th day of September A. D. 1926 at the aforesaid City, within the limits of said city, W. W. Smith, then being the owner and manager of a moving-picture show located in said city, and known as the Grand Theatre, did then and there wilfully and unlawfully keep open said Grand Theatre and conduct therein a moving-picture exhibition on the said 19th day of September A. D. 1926, the said day being the first day of the week, commonly called Sunday, contrary to Section 1 of Ordinance Number 11885 of the city of Springfield, Missouri, and contrary to the city ordinance in such cases made and provided, and against the peace and dignity of the city."

Upon a jury trial in the Municipal Court defendant was convicted and fined $100, and thereupon duly appealed to the Criminal Court of Greene County.

After the case reached said Criminal Court, and before trial upon the merits, the defendants filed a motion to dismiss the cause, which was sustained. Said motion alleged as grounds therefor, "That said ordinance (being the ordinance upon which the case was founded) is a special law, or ordinance, where a general law or ordinance could be made applicable to the subject-matter thereof, contrary to and in violation of Section 53 of Article 4 and more particularly sub-section 32 of said Section of the Constitution of the State of Missouri." Other portions of the motion to dismiss merely amplify the main contention above quoted.

The ordinance thus attacked was adopted by a vote of the people at a special election held in said city December 27, 1921, and omitting formal parts, reads as follows:

"Section 1. No person, or persons, corporation or manager, agent or employee of such person, persons or corporation, shall in this city, keep open any theatre, playhouse, or any other place where theatrical performances, vaudeville shows or moving-picture exhibitions are given or conducted, nor conduct or take part in any such theatrical performance, vaudeville show or moving-picture exhibition, on the first day of the week commonly called Sunday; and every person violating any of the provisions of this ordinance, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than one hundred, nor more than five hundred dollars."

Appellant's assignments of error, two in number, are as follows:

"The court erred in holding that the ordinance of the city of Springfield prohibiting vaudeville and moving-picture shows on Sunday is unconstitutional and void.

"The court erred in sustaining defendant's motion to dismiss the case on the ground that same was based on an invalid and void ordinance and no conviction could be sustained."

I. It thus appears that the sole question involved is whether or not said ordinance violates Sub-section 32 of Section 53, Article 4, of the Constitution of Missouri. Said constitutional inhibition reads as follows:

"Where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been  made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject."

The above constitutional inhibition applies to city ordinances as well as to state laws. [Ex parte Lerner, 281 Mo. 18.]

It is well established in this State that a law is not a special law if it apply to all alike of a given class, provided the classification thus made is not arbitrary or without reasonable basis.

"Both upon principle and authority the acts of the Legislature are to be presumed constitutional until the contrary is clearly shown; and it is only when they manifestly infringe on some provision of the Constitution that they can be declared void for that reason. In case of doubt every possible presumption, not directly and clearly inconsistent with the language and subject-matter, is to be made in favor of the constitutionality of the act." [H|amman v. Cen. Coal & Coke Co., 156 Mo. 232, l. c. 242; Bank v. Clark, 252 Mo. 20, l. c. 30.]

BLAIR, C. J., speaking for Court en Banc, in State ex inf. v. Hedrick, 294 Mo. 21, 241 S. W. l. c. 420, said:

"A law may not include less than all who are similarly situated. If it does, it is special and, therefore, invalid, because it omits parts of those which in the nature of things the reason of the law includes. The question is not whether, considering all the circumstances which exist, the Legislature might not constitutionally make a law which would include a larger class. On the contrary it is whether it appears beyond a reasonable doubt that there are no distinctive circumstances appertaining to the class with respect to which it has legislated which reasonably justify its action in restricting the operation of the law to the persons, objects or places to which the law is made applicable."

GRAVES, J., speaking for Court en Banc, in State ex rel. v. Hartmann, 299 Mo. 410, 253 S. W. l. c. 994-5, said:

"That the law-makers have the right to make reasonable classifications of subjects, notwithstanding that some kind of a general law might be passed, is a matter of universal recognition in this State. A general law could be passed to cover any particular subject, yet it might not work out well in actual practice. . . . If there is a reasonable basis for the classification, the law must stand. If there is no reasonable basis the law must fall."

The above statements are sound and now form a part of the well-settled law of this State, but in this connection it must not be forgotten that the above constitutional mandate in clear and unambiguous language directs that the question as to whether a general law could have been made applicable is "a judicial question and as such shall be judicially determined."

This does not mean that the judiciary can dodge the question by modestly referring to the wisdom of the law-giver as to the sound-

ness of the classification or that it may hide behind a presumption, if to the judicial mind unreasonableness as to classification appears. But it does mean (unless the above-mentioned clause is to be held meaningless) that the judiciary shall use its own processes of logic in determining the presence or absence of reasonableness or unreasonableness in the given classification.

In this regard the Constitution of Missouri appears to be unique. Our review of the Constitutions of the forty-eight states as compiled in "The State Constitutions" by Kettleborough (1918) discloses only three other states, viz., Minnesota, Kansas, Michigan, which have constitutional provisions expressly making the determination of the question of whether a general law can be made applicable a *judicial question*. This is important because little aid can be given in the present controversy by decisions of some of the other jurisdictions tending to hold that the question of classification is solely a legislative one.

So far as we have been able to discover by a somewhat limited research the provision *expressly* making the question a judicial one first appeared in the Missouri Constitution of 1875; in the Minnesota Constitution by amendment in 1892; in the Kansas Constitution by amendment adopted by a vote of the people in 1906 and in Michigan in the Constitution of 1908.

In the opinion of many writers, it has long been thought that questions of this kind were in the final analysis necessarily judicial questions. However, the tendency of many courts, influenced no doubt by decisions from jurisdictions containing no constitutional inhibitions against special laws and other causes difficult to discern, has been to defer very largely and in some instances entirely, to the wisdom of the Legislature in matters of classification.

This was the rule in Missouri prior to the adoption of the Constitution of 1875. Under the Constitution of 1865, which prohibited special laws whenever a general law could be made applicable, the court had uniformly held that the question of whether a general law could be made applicable was a legislative one and one which could not be interfered with by the courts. [State ex rel. Henderson v. Boone Co., 50 Mo. 317, 1. c. 323-324; Ensworth v. Curd, 68 Mo. 283, 1. c. 285.] And it was no doubt this line of decisions which caused the framers of the organic law in 1875 to *expressly* provide, for the first time, that the question of whether a general law could be made applicable was a "judicial question and as such shall be judicially determined." Thereafter and by reason thereof this court held that the express constitutional language should control and that such questions were to be determined by the courts. [Henderson v. Koenig, 168 Mo. 356, 1. c. 375-377.]

A very similar situation existed in Kansas prior to the amendment of 1906. The Supreme Court of that State, while expressing considerable doubt as to the soundness of a long line of its decisions to the effect that the question of classification in legislation was a legislative and not a judicial question, felt itself deterred from making the change and suggested that the proper method of relief from the growing evil of special legislation in that State was a constitutional amendment. [See cases discussed in Anderson v. Cloud County, 77 Kan. 721.] Consequently in 1905 the Kansas Legislature submitted a constitutional amendment to the voters of that State, which was adopted in 1906, and was to the effect that the question of whether a statute violated the constitutional provisions against special laws was to be determined by the courts. After this express amendment became a part of the organic law of that State, the Supreme Court of Kansas failed to follow its former decisions holding that the legislative determination as to the classification was final, and in construing the amendment of 1906 said:

"When a special law is passed, therefore, the Legislature necessarily determines in the first instance that a general law cannot be made to apply. But their determination is not final. There is, of course, a presumption that public officers have discharged their duty properly, and every act of the Legislature is presumed to be valid until there is a judicial determination to the contrary. But when a special law has been enacted and its validity is assailed in the courts the question is to be finally determined by the courts as a judicial question, uncontrolled by the determination of the Legislature. The courts must determine the question as other purely judicial questions are determined, by reference to the nature of the subject; not upon proof of facts or conditions, but upon the theory that judicial notice supplies the proof of what courts are bound to know, and that courts must be aware of those things which are within the common knowledge, observation and experience of men generally." [Anderson v. Cloud County, supra, 77 Kan. 1. c. 734.]

The Supreme Court of Michigan referring to a similar constitutional provision in the Michigan Constitution of 1908, said: "It is a clear indication that the people did not intend to curtail the jurisdiction of the courts to determine finally questions arising under this Constitution." [Attorney-General v. Lindsay, 178 Mich. 524, 1. c. 534.] And further in another case, in discussing the wisdom of the constitutional inhibition against special laws, said that it was "to secure for all general legislation *grave attention* and the application of the *collective wisdom* of the legislators." [Attorney General v. Lacy, 180 Mich. 329, 1. c. 338.] The italics are ours.

II. Assuming then our plain duty of determining the question of whether a general law could have been made applicable, it becomes our first concern to ascertain the fundamental subject-matter of the legislation (ordinance) now under review. Once this is ascertained we can the more accurately take up the question of permissible sub-classification, if any, and its relation to the question in hand.

For more than fifteen centuries, at least, laws prohibiting certain secular activities on Sunday have been created by edicts of emperors and enacted by legislative bodies. [37 Cyc. 540.]

While we can receive no special aid or light on the present problem in researching into the ancient past or into the archives of governments unlike our own, to discover the basis of the validity of the power authorizing such edicts or enactments, we can and do receive valuable aid and light in examining into the reason underlying the validity of such legislation in this country.

In this country we find that by the great weight of authority it has now become well established that such legislation is the result of a permissible exercise of the police power of the different states in establishing one day's rest in every seven days, as a benefit to public health, peace and good order.

The general and well established rule here applicable is tersely stated in 37 Cyc. 541-2 as follows:

"As statutes which designate Sunday as a day of rest and prohibit the doing of specified acts on that day have for their object the promotion of the health, peace and good order of society by requiring man to take a periodical day of rest, they have, from the beginning been constantly upheld as constitutional on the ground that they are within the domain of the police power. They are essentially civil, and not religious, regulations, whose validity is neither strengthened nor weakened by the fact that the day of rest they enjoin is the Sabbath. The few instances in which such statutes have been held to be invalid are cases where a single class of persons has been singled out and legislated against, and the classification was so arbitrary and the discrimination so unreasonable as to fall under the head of class legislation."

Many leading cases will be found cited in support of said text, to which the curious may refer if so inclined.

The above general rule has become the established rule in this State also.

In State v. Railroad, 239 Mo. 196 l. c. 209, it was announced by Court en Banc in the following language:

"The Missouri Sunday laws have regard to that day as a day of rest, and not to the religious character of the day. They are

civil, not religious, regulations, and are based upon a sound public policy which recognizes that rest one day in seven is for the general good of mankind. [Hennington v. Georgia, 163 U. S. 229, 1. c. 304.] Those laws are sustained in civil, municipal or police regulations, without reference to the fact that the day of rest is also the Christian's day of rest and worship.''

To the same effect are State v. Granneman, 132 Mo. 326, 1. c. 331, and St. Louis v. DeLassus, 205 Mo. 578, 1. c. 585.

Since the general and permissible subject-matter of such legislation is the creation or maintenance of a periodical day of rest, it would be possible of course to include in such legislation, every activity of the people which tends to interfere with or prevent that accomplishment. But as pointed out above it is not necessary to the validity of such legislation that it shall include every possible activity which might be included in the subject-matter. The demands of the organic law are satisfied if all similarly situated are included, and none are omitted whose relationship to the subject-matter cannot by reason be distinguished from that of those included.

The general classification of all activities may fall into many subclassifications, viz.: the operation of stores and general trade, the operation of public amusement businesses, the engaging in labor, the engaging in sports, games, hunting, etc. Legislation has been upheld which embraced all or a part of the above-named classified activities. The occurrence of any of the above-mentioned classes of activities may in varying degrees, disturb the day set aside for public rest. The operation of public amusement business on the day designated for rest, by reason of their ability to attract the attendance of large portions of the citizenship might be greater offenders than the carrying on of some other lines of business, and it might be proper that a different penalty for one over the other be applied. This is corroborated by the well-known fact that greater police surveillance is required in connection with businesses where crowds congregate, thereby indicating a greater possibility for the occurrence of disturbing factors. So that we are unable to say beyond a reasonable doubt that every kind of business falls within the same category as amusement businesses. Many reasons suggest themselves to indicate that general lines of business and trade might not bear a similar relationship to the given subject-matter of this legislation. It is also true that the offense of the individual engaging in labor on that day might not be as disturbing to a day of public rest as matters inciting mass activities and for that reason might not call for the same penalty as either of the above.

The above and other reasons exist why all activities relating to the day of public rest need not necessarily be dealt with in the same

legislative act. We are not here so much concerned with determining how many activities which threaten to disturb the subject-matter sought to be protected could or might be included in the one piece of legislation, but our problem of instant concern is whether some have been omitted from the ordinance now involved which it would be clearly unreasonable and arbitrary to omit.

Of course if all secular activities must be included then clearly the ordinance would be bad, because many are omitted.

On the other hand if the purpose of the ordinance is merely the prevention of labor on that day it would clearly be void under the doctrine announced by this court in State v. Granneman, 132 Mo. 326, because many other kinds of labor similarly situated are omitted. But a law of this kind need not be based solely upon the ground of preventing labor. Labor is not the only enemy of rest. Mental excitement, noise, and many physical activities not catalogued as labor may also seriously contribute to the disturbance of a day of public rest.

It is true that the keeping open of a public amusement business involves labor activities but they may also involve much more. The labor involved might affect only the small number necessary to operate the business, but the operation of the same might disturb the repose and rest of a far greater number than those so engaged.

We are therefore unwilling to say that this ordinance is invalid because it does not embrace all kinds of labor. This for the reason that it is quite apparent that the legislation seeks to include within its scope factors of unrest entirely different from the factor of labor.

Neither are we willing for the reasons above indicated, to say that the ordinance is void because it does not embrace within its terms the prevention of the operation of all kinds of business.

We gather from the memorandum opinion of the learned trial judge that he considered the classification here involved to be that of public amusement businesses.

We are of the opinion that, keeping in mind the permissible objective sought by this ordinance, it is entirely reasonable to say that the classification of public amusement businesses may properly form the basis in such cases for separate treatment by the law-giving power.

Arriving then at the conclusion that public amusement business may be dealt with as a valid classification for this kind of legislation, how stands the ordinance involved?

We find that it prevents only the keeping "open of any theatre, playhouse, or any other place where theatrical performances, vaudeville shows or moving picture exhibitions are given or conducted,"

or conducting or taking part in any such performance, show or exhibition.

The question at once arises, Why was there an omission from the ordinance of the keeping open and operation of such public amusement businesses as concerts, circuses, amusement parks, public halls, sparring exhibitions, wrestling exhibitions and like public amusement business, which under its charter (Sec. 7976, R. S. 1919) the city of Springfield also had the power to regulate?

Each and all of the public amusement businesses above enumerated, but omitted from the operation of the ordinance, affect the permissible subject-matter of this legislation in very much the same way. The keeping open and operation of each requires similar labor activities; each furnishes to the public for a consideration an opportunity for excitement and entertainment, and each is sufficiently attractive to induce large portions of the public to attend and each is fairly and reasonably comparable with theatres, vaudeville shows and moving picture exhibitions in their possibilities of disturbing a day of rest. We find no reason which would justify the regulation of one in this regard which will also not apply with equal force to the others. They all appear to be similarly situated with reference to the permissible subject-matter sought to be dealt with by the ordinance.

It was of course within the sole discretion of the legislative department (in this case the citizens of the city of Springfield) to determine whether it would legislate upon this subject-matter. It was not compelled to do so, but having so decided it was then imperative under the above-mentioned constitutional inhibition that it include within the ordinance all others of the class similarly situated. The non-compliance with this constitutional command might easily have been one of the controlling factors in the enactment of the ordinance, for it does not require any unusual insight into human affairs to see that an ordinance omitting a large portion of a class similarly situated might by that very fact alone cause the adoption of the ordinance. If theatres and moving picture exhibitions are prevented from operation on any given day, it would very probably follow that the attendance at other public amusements, permitted to be operated on that day, would be greatly increased thereby. At least the prospect would present a very great temptation on the part of omitted public amusement owners to urge the passage of such special legislation. The tendency would also be to lull into indifference, large portions of the citizenship whose favorite public amusements had been omitted, and thereby deprive such legislation of the "grave attention and the application of the collective wisdom" of the law giver which the inhibition against special legislation hopes to induce. [Attorney-General v. Lacy, supra, 180 Mich. 329.]

The inhibition against special laws is also a wise safeguard for the protection of the minority against the unfair encroachment of the majority. It does not take from the majority any right based on justice or equality, but merely restrains the majority from unjustly discriminating between those of a group which are situated similarly with reference to the subject-matter of the legislation.

If the wholesome formula thus laid down by the organic law is adhered to the product will be laws which have as their basis, justice, and not injustice; equality, and not inequality; reasonableness, and not unreasonableness; the collective judgment of the majority when directed at the whole, and not merely at a portion of the problem attempted to be dealt with, thereby greatly enhancing its opportunity for public respect, obedience and enforcement.

For the foregoing reasons we are of the opinion that the ordinance in question violates the above-mentioned constitutional provision against special legislation and is for that reason void.

III. Many authorities are cited by the able counsel representing appellant in this controversy. We have carefully examined them all, but fail to find any well-reasoned case which in our opinion squarely passes upon the exact problem involved in this appeal.

It would serve no useful purpose to review all the cases cited on this question. We will content ourselves with reference to a few which may be regarded as typical.

In the case of Ex parte Johnson, 20 Okla. Cr. 66, the ordinance prohibited moving picture and vaudeville shows on Sunday. It is somewhat difficult to ascertain the exact constitutional question raised in that case. Many grounds of attack were directed at the ordinance. In considering the question of class legislation the court contents itself with merely saying: "In our opinion the ordinance is not class legislation." The court in further discussing the proposition seemed to be of the opinion that the main question involved was whether the State under its police power had the right to prevent the operation of theatres on Sunday. Of course there can be no doubt under the present overwhelming weight of authority about the power of the State to prevent the operation of theatres on Sunday. That is not the troublesome question we have here, viz: Did the law-making body exercise that power in a constitutional manner. We find the above decision far from convincing on the latter question.

In the case of State v. Loomis, 75 Mont. 88, the statute prevented the operation on Sunday of dance halls, race tracks, gambling houses, pool rooms and variety halls or other places of amusements where intoxicating liquors are sold, and exempted from the operation of the

statute dance halls or pavilions maintained free of admission in an orderly manner in public parks or play grounds where no intoxicating liquors are sold. The court held that this statute did not violate the equal-protection clause of the Fourteenth Amendment, and further said: "At least we are not satisfied beyond a reasonable doubt that the classification made by the amended act is arbitrary or unreasonable, and this is the test by which the validity of the act must be determined." We think it quite apparent that that case involved questions unlike the one here involved, and the decision there throws no helpful light on the present controversy.

In the case of State ex rel. v. Barnes (N. Dak.), 37 L. R. A. (N. S.) 114, the law prohibited theatres and moving-picture shows on Sunday. Appellant raised the objection that it was a special law. In discussing this question the court said: "It is quite evident that, instead of this being a special law, it is in the nature of an addition to the old statute on the subject, making it more general in its terms and more universal in its application than it was before the new enactment took effect. It enlarges the scope and application of the statute by enumerating theatres and shows among the prohibited avocations, and is not subject to objection made." It is true that the court also said it would have been good even though it stood alone, but this was a mere *dictum* and should carry little weight as an authority.

In the case of West Coast Theatres Inc. v. Pomona, 68 Cal. App. 763, a city ordinance prohibited the operation of any theatre, moving-picture theatre, public dance hall, pool or billiard hall, skating rink or other place of public amusement, but exempted from the ordinance the operation of moving-picture shows by "religious, benevolent, fraternal, patriotic or charitable societies without charge." The court held that the ordinance was not invalid because it discriminated between moving picture shows conducted for profit and those conducted without profit by charitable and religious societies.

In the case of Power v. Nordstrom, 150 Minn. 228, a village of 1000 inhabitants passed an ordinance prohibiting "the exhibition . . . in said village of any moving picture show, show, circus, menagerie, vaudeville or theatrical entertainment for the amusement of the public on Sunday." The question of class legislation was not raised or discussed. The main question discussed was whether the ordinance came in conflict with a state statute on the subject, which omitted picture shows.

In the case of State v. Herald, 47 Wash. 538, the court dealt with a statute enacted in 1886. The statute included many forms of public amusement omitted from the present ordinance, and the exact constitutional question involved in the case at bar does not appear

to have been raised or discussed. One of the main contentions concerned the construction of the act, one side contending that it prevented play houses or theatres from being used for church purposes on Sunday. The court held the statute was not subject to that construction.

In the case of Carr v. State, 175 Ind. 241, the question involved was whether an amendment to the general Sunday law of Indiana, by which amendment, Sunday baseball was permitted between certain hours on that day, was valid. The majority opinion held the amendment valid. A strong and well-reasoned minority opinion expressed a contrary view. On the question of whether or not the amendment was void as being a special law the writer is of the opinion that the minority opinion expresses the sounder view.

In City of Ames v. Gerbracht, 194 Iowa, 267, an ordinance of the city of Ames prohibited theatrical performances, vaudeville shows and motion pictures on Sunday. The points decided were that the city was authorized to regulate picture shows; that the ordinance was not void as being in conflict with the general state law, and that the ordinance was not an unreasonable exercise of the power to regulate. The exact question of special legislation does not appear to have been raised or discussed.

In State v. Dolan, 13 Idaho, 693, the general state statute prohibited keeping open on Sunday, for the purpose of trade, any shop, store or place of business whatever, except hotels, restaurants, livery stables, stores selling medicines and supplies for the sick, undertakers, news stands in the quiet sale of refreshments, candies and cigars, and further prohibited sale on that day of intoxicating liquors and the opening of a theatre, playhouse, dance hall, race track, merry-go-round, circus show, concert, saloon, billiard or pool room, bowling alley, variety hall or any place of public amusement, and also prohibited horse racing. The court held it was a general law and not a special law. It is certainly at once apparent that that decision cannot aid appellant in the present controversy.

For the reasons hereinabove set forth we are of the opinion that the judgment of the trial court is correct and should be affirmed. It is so ordered.

All concur, except *White, C. J.*, not sitting; *Atwood, J.*, in separate opinion in which *Frank, Blair, Gantt* and *Walker, JJ.*, concur.

ATWOOD, J.` (concurring):—I concur in the excellent majority opinion, but do so in a separate opinion in order to deal with the principal question involved from a somewhat different but not inconsistent approach.

Respondent was charged in a complaint filed by the city attorney in the Municipal Court of the City of Springfield, Missouri, with a violation of City Ordinance Number 11885, which prohibits the keeping open of any theatre, playhouse, or other place where theatrical performances, vaudeville shows or moving picture exhibitions are conducted, or conducting or taking part in any such performance, show or exhibition, on Sunday. Defendant was adjudged guilty and fined one hundred dollars ($100), and thereupon appealed to the Criminal Court of Greene County, Missouri, where he filed a motion to dismiss the complaint. This motion was sustained, and from the order and judgment entered thereon discharging the defendant the city of Springfield has perfected its appeal to this court on the ground that a constitutional question is involved.

Appellant is a city of the second class. Its charter is contained in Article III, Chapter 72, which comprises Sections 7970 to 8205, both inclusive, Revised Statutes 1919. The ordinance in question was enacted by a vote of the people of the city of Springfield upon a referendum under Section 7997, Revised Statutes 1919, and later upheld and confirmed by a second and a third vote upon petitions to repeal the same. Omitting caption and formal parts the ordinance is as follows:

"No person, or persons, corporation or manager, agent or employee of such person, persons or corporation, shall, in this city, keep open any theatre, playhouse, or any other place where theatrical performances, vaudeville shows or moving-picture exhibitions are given or conducted, nor conduct or take part in any such theatrical performance, vaudeville show or moving-picture exhibition, on the first day of the week commonly called Sunday; and every person violating any of the provisions of this ordinance, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than one hundred nor more than five hundred dollars."

The complaint charges that "on or about the 19th day of September, 1926, at the aforesaid city, within the limits of said city, W. W. Smith, then being the owner and manager of a moving picture show located in said city, and known as the Grand Theatre, did then and there wilfully and unlawfully keep open said Grand Theatre and conduct therein a moving picture exhibition on the said 19th day of September A. D. 1926, the said day being the first day of the week, commonly called Sunday, contrary to Section 1 of Ordinance Number 11885, of the city of Springfield, Missouri, and contrary to the city ordinance in such cases made and provided and against the peace and dignity of the city."

In his motion to dismiss, defendant alleged that the ordinance was unconstitutional and void for certain reasons which may be summarized as follows:

"Said ordinance is a special law, or ordinance, where a general law or ordinance could be made applicable to the subject-matter thereof, contrary to and in violation of Section 53 of Article 4, and more particularly Sub-Section 32 of said section of the Constitution of the State of Missouri," in that said ordinance only purports to prohibit certain things therein named, whereas "in order for such an ordinance to be valid, it must apply to all kinds of secular work, and the operation of all kinds of businesses, or occupations, or vocations, which cannot properly be excepted therefrom on the grounds of necessity or charity;" that "said ordinance is class legislation under said provision of said Constitution, for the reason that it does not apply to all persons who, in the nature of things, the reason of the ordinance includes, and that the classification therein is arbitrary, in that there is no peculiarity in the condition of the members of the constituted class, or their business, or occupation, or vocation, which justifies their segregation for the purpose of prohibiting them from keeping open and conducting their businesses on Sunday, as a general ordinance could be passed prohibiting the doing of any work or carrying on any business, or occupation, or vocation, not of necessity, or charity;" that "said ordinance shows upon its face that it is class legislation, and void under said constitutional provision;" and that "said city of Springfield has no power, under its charter, to pass a Sunday ordinance, applicable alone to the persons and things specified in said ordinance, but is prohibited from doing so by the said provision of the said Constitution."

Appellant assigns error as follows:

"The court erred in holding that the ordinance of the city of Springfield prohibiting vaudeville and moving-picture shows on Sunday is unconstitutional and void.

"The court erred in sustaining defendant's motion to dismiss the case on the ground that same was based on an invalid and void ordinance and no conviction could be sustained."

All of the objections contained in the motion to dismiss are grounded in the charge that the ordinance violates "Sec. 53 of Art. 4, and more particularly Sub-section 32 of said section of the Constitution of the State of Missouri." From the trial court's memorandum opinion quoted in appellant's printed statement it appears that the only question there presented and ruled was whether or not the ordinance violated this constitutional provision. Consequently, we shall concern ourselves with no other question subsequently sought to be raised on this appeal. [McManus v. Park, 287 Mo. 109, 123; Howell v. Jackson County, 262 Mo. 403, 414, 415; and Shohoney v. Railroad, 231 Mo. 131, 148.]

The relevant part of the above-mentioned Sub-section 32 is as follows:

"In all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject."

We have held that the constitutional provision here invoked applies to municipal as well as to state legislation. [Ex parte Lerner, 281 Mo. 18.] The thirty-one sub-sections immediately preceding and the first sentence in this Sub-section 32 of Section 53, Article 4, of the Constitution specify the kind of "local or special" laws which the General Assembly shall not pass. Immediately following these prohibitions is the provision above quoted. It does not appear, and counsel for respondent do not claim, that the ordinance in question falls within the thirty-two classes of local or special legislation the enactment of which is thus absolutely prohibited. It follows that the mere fact, if it be a fact, that the ordinance is local or special does not necessarily make it invalid. If the ordinance does not fall within the classes thus specifically prohibited it is valid, although local or special, except "where a general law can be made applicable," and whether a general law could have been made applicable in any case is by the above quoted constitutional provision "declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject." In other words, we must first determine whether or not the ordinance is a local or special law. If this inquiry is answered in the negative there is no other question for our determination in the case, and the ordinance must be held constitutional. If answered in the affirmative we must further consider and decide, as a judicial question without regard to any legislative assertion on that subject, whether or not a general law could have been made applicable.

In our consideration of these questions it must be borne in mind that nearly every state has some constitutional provision with reference to the enactment of local or special laws, and that there is wide variance in the form and substance of these provisions. According to Kettleborough's compilation entitled "The State Constitution," published in 1918, the constitutions in a half dozen or more states simply specify a number of cases in which no local or special law shall be enacted, and provide that in other cases local or special laws may be passed on public notice. In twenty or more states the passage of local or special laws is prohibited in a number of specified instances, with the further provision that in all other cases no local

or special law shall be enacted where a general law can be made applicable, and without indicating whether the determination of such applicability shall be a legislative or a judicial question. Naturally there is lack of harmony in the judicial decisions of these states, some treating it as a judicial and others as a legislative question. A few states, such as New York, New Jersey and Virginia, have constitutional provisions enumerating the cases in which the enactment of local or special laws are absolutely forbidden, and further providing that the legislature shall pass general laws for the cases so enumerated and for all other cases which *in its judgment* may be provided for by general laws. The Constitution of the State of Maine merely provides that the Legislature "shall, from time to time, provide, as far as practicable, by general laws, for all matters usually appertaining to special or private legislation." As far as we have been able to ascertain only four states have a constitutional provision making the determination of whether or not a general law could have been made applicable in any case where a local or special law has been enacted a judicial question. These states are Missouri, Michigan, Minnesota and Kansas, and the related provisions are substantially the same, all (except Kansas) prohibiting the enactment of local or special laws in enumerated cases, all recognizing that such laws may be necessary in other cases, but prohibiting their enactment where a general law can be made applicable, and making the determination of the applicability of a general law a judicial question.

We come now to the vital questions involved in this case. First, is the ordinance a local or special law? The following excerpts from our decisions illustrate the prevailing view in the State as to the distinction between a local or special law and a general law.

" 'In order to determine whether or not a given law is general, the purpose of the act and the objects on which it is intended to operate must be considered. If these objects are distinguished from others by characteristics evincing a peculiar relation to the legislative purpose, and showing the legislation to be reasonably appropriate to the former and inappropriate to the latter, the objects will be considered, as respects such legislation, to be a class by themselves, and legislation affecting such a class, to be general.' " [State ex rel. v. Gordon, 245 Mo. 12, 33, quoting with approval 26 Am. & Eng. Ency. Law, p. 683.]

"The rule that a statute which relates to a class of persons or class of things is general, while one which only applies to particular persons or things is special, has been generally announced in this and other jurisdictions. [State ex rel. v. Taylor, 224 Mo. l. c. 477, 478, and cases cited; Elting v. Hickman, 172 Mo. 257, and cases

cited; State ex rel. Dickason v. County Court of Marion County, 128 Mo. 427; Lynch v. Murphy, 119 Mo. 163; State ex rel. Lionberger v. Tolle, 71 Mo. l. c. 650.] It is, however, an essential adjunct of this rule that the classification made by the Legislature shall rest on a reasonable basis and not upon a mere arbitrary division made only for purposes of legislation. [State ex rel. v. Roach, 258 Mo. l. c. 563; Hawkins v. Smith, 242 Mo. l. c.* 696.] When this is borne in mind, and a statute is enacted upon a basis justifying its classification and is made to apply to all persons who may hereafter fall within its purview, it is not special legislation." [State ex inf. Barker v. Southern, 265 Mo. 275, 286.]

"The question is not whether, considering all the circumstances which exist, the Legislature might not constitutionally make a law which would include a larger class. On the contrary, it is whether it appears beyond a reasonable doubt that there are no distinctive circumstances appertaining to the class with respect to which it has legislated which reasonably justify its action in restricting the operation of the law to the persons, objects or places to which the law is made applicable." [State ex inf. Atty.-Gen. v. Hedrick, 294 Mo. 21, 74.]

Having assailed the ordinance as a special law respondent must carry the burden of showing that the classification so made rests upon an unreasonable basis or distinction. His chief contention, running through the pleading, printed briefs and oral arguments presented in his behalf, is, in the language of the motion to dismiss, that "in order for such an ordinance to be valid, it must apply to all kinds of secular work, and the operation of all kinds of businesses, or occupations, or vocations, which cannot properly be excepted therefrom on the grounds of necessity or charity." The proposition is thus bluntly stated in the printed argument first submitted for respondent: "The sole object of a Sunday law is to prohibit labor and ordinary businesses. . . . It is and always has been justified solely on the ground that it is for the benefit of those engaged in the labor or in conducting the businesses." From the vantage point of this broad assertion counsel present a vigorous argument, but to no purpose in the determination of this case, for our statutes and judicial decisions, as we read them, render no such classification necessary.

Looking to the statutes, in 1877 (Laws 1877, p. 241), we find that the very law that forbids labor on Sunday, which had long been on the books, was amended so as to make it also a misdemeanor to "be guilty of hunting game or shooting," on Sunday, acts not ordinarily regarded as having any of the characteristics of labor. The statute as thus amended is still a part of our state law, appearing as Section

1152.

3596, Revised Statutes 1919. Also, Section 3598, Revised Statutes 1919, which has been on the books since the statutory revision of 1845, makes misdemeanors of "horse racing, cock-fighting or playing at cards or games of any kind on Sunday." Neither are these acts generally characterized as labor. Both statutes have from time to time been attacked and construed, but never held unconstitutional.

Turning to our judicial decisions we find that in State v. Granneman, 132 Mo. 326, l. c. 331, cited by respondent as "decisive of this case," Division Two of this court held that a statute which makes it "a misdemeanor for any person to carry on the business of barbering on Sunday" was in conflict with the same constitutional provision that is here invoked. The opinion also states that the object of the law in question was "to enforce an observance of the Sabbath, and to prohibit that kind of labor on that day;" but it does not hold that "the sole object of a Sunday law is to prohibit labor." or that it is "justified solely on the ground that it is for the benefit of those engaged in the labor." In discussing statutes which were directed solely to the labor aspect of the acts prohibited on Sunday the writer of the opinion correctly said that "the policy of our laws is to compel the observance of Sunday, as a day of rest" but, as suggested in the majority opinion, labor and business are not the only enemies of rest, and the opinion does not undertake to specify, limit or define in an exclusive sense the objects, aims and purposes of all Sunday laws, or the grounds upon which they are sustained. The case of State v. Ambs. 20 Mo. 214, and State v. Chicago, Burlington & Quincy Railroad Co., 239 Mo. 196. cited by respondent, present only the labor aspect of the forbidden businesses, the majority opinion in the latter case finally resting upon a determination that the labor contemplated by the statute in question was a work of necessity and therefore not unlawful or unconscionable. Neither these cases nor any others of which we have notice hold that cessation from labor and ordinary business exhausts the object, purpose and concern of our public policy touching Sabbath observance. Respondent's above assertions as to the necessity of a single classification thus appear to be without either legislative or judicial sanction in this State.

Nor do we find any substantial support of respondent's view in other jurisdictions. In a broad sense the person who labors is also engaged in business. and the person who conducts a business usually performs some labor. But it is generally recognized that substantial differences in the nature. effect and regulation necessary to bring the otherwise lawful pursuits of labor and business into harmony with an observance of the established day of rest form a reasonable basis for separate classifications. So, the tendency of

businesses furnishing public amusement to attract crowds and induce physical and mental excitement different both in kind and degree from that of ordinary business and labor, but likewise inimical to the observance of Sunday as a day of rest, of which fact judicial notice must be taken, forms a reasonable basis for their separate classification. The ordinance, therefore, is not a special law on the first ground advanced by respondent, and this contention is overruled.

A more serious question is presented in respondent's other contentions which really merge in the one complaint that even though public amusements may under this provision of the Constitution be treated as a distinct class for the purpose of legislation, yet the separation of theatrical performances, vaudeville shows and moving-picture exhibitions from other public amusements is without any reasonable basis or distinction, and the ordinance for that reason violates the constitutional provision under consideration.

As heretofore observed Springfield is a city of the second class deriving its charter powers directly from Sections 7970 to 8205, both inclusive, Revised Statutes 1919. Among the powers of cities of the second class enumerated in Section 7976 are the following:

"XVIII. To license, tax and regulate . . . barber shops. hairdressing establishments, bathhouses, hotels, rooming houses, ordinaries, apartment houses, confectioners, restaurants, boarding houses, tenement houses, office buildings, public halls, public grounds, photographers, artists, auctioneers, plumbers, stockyard and wagon yard proprietors, undertakers, meat shops, livery, board and sale stable keepers, shows, circuses, parades, operatic, theatrical and other exhibitions; amusements, concerts, theatres, theatrical agents, amusement parks, cattle shows, horse shows. automobile shows, dog shows, poultry shows, animal shows, menageries, museums, sparring exhibitions, equestrian exhibitions, horoscopic views, moving-picture exhibitions, cycloramas, panoramas, signs, skating rinks, wrestling exhibitions, boxing contests, public masquerade balls, shooting galleries, dance halls, dance houses, fortune tellers, clairvoyants, palmists, lung-testers, muscle developers, billiard parlors, billiard and pool tables and instruments used for amusement; . . . and in the exercise of the foregoing powers to divide the various occupations, professions, trades, pursuits, corporations, and other institutions and establishments, articles and commodities into different classes."

It will be observed that by the foregoing statute the city of Springfield is specifically empowered to regulate many public amusements. The power is permissive. The city was not obliged to exercise it, but having chosen to do so it may not "make fish of one and fowl of another" among those subject to regulation and similarly situated. If some are made amenable to a Sunday law and others are

not, or if some are so regulated by one ordinance and others by another, there must be some reasonable basis for such classification or the law is special. What reasonable basis or distinction can be suggested, to justify closing theatrical exhibitions, vaudeville shows and moving-picture exhibitions on Sunday and not extending the same regulation to shows, circuses, boxing contests and operatic exhibitions, all of which are similarly situated and subject to like regulation. Appellant has presented none, and we confess our inability to discover any. Other equally striking comparisons might be drawn from the subjects enumerated in this statute. The ordinance in question thus falls within the class of local or special laws. We have carefully examined the cases cited by appellant on this point. Many of them arise in states that have no constitutional provision like the one here under consideration, others do not determine the question here raised, and the few decisions that seemingly touch it in any way do not convince us that they should be followed in this State.

The final question for our determination is whether or not a general law could have been made applicable. We have given careful consideration to this phase of the case and are unable to conceive of any substantial reason why all public amusements subject to such regulation and not characterized by any distinction that would be a reasonable basis for further classification should not have been included in one ordinance. We are aware of the ruling in certain cases, where constitutional provisions unlike the one here controlling were involved (Cf. Carr v. State, 175 Ind. 241; Breyer v. State, 102 Tenn. 103; State v. Ambs, 20 Mo. 214, 220; People v. Bellet, 99 Mich. 151, 22 L. R. A. 696; Stanfeal v. State, 78 Ohio St. 24, 14 Ann. Cas. 138; State of Nebraska v. Murry, 8 A. L. R. 563, 566, case note; Moore v. Owen, 58 Misc. 332, 109 N. Y. Supp. 585; and State v. Loomis, 75 Mont. 88), to the effect that the Legislature may recognize different degrees of evil tendency in different forms of amusement, and may give effect thereto in Sunday laws fixing different penalties, without such legislation being open to the charge that it is arbitrary or unwarranted, although such laws be deemed special. The above cases from Missouri and Michigan were so ruled before the adoption of the constitutional provision now in force making it a judicial question whether in such case a general law could have been made applicable. In this case we think an adequate range of penalties might well have been provided in a general ordinance, and, hence, are constrained to hold that a general law of the character above indicated could have been made applicable. For this reason the ordinance in question is unconstitutional.

The judgment is affirmed. *Walker, Blair, Gantt* and *Frank, JJ.,* concur.