Dewey **WILSON** et al.,
**Plaintiffs-Respondents,**

v.

**CITY OF WAYNESVILLE et al.,
Defendants-Appellants.**

No. 11871.

Missouri Court of Appeals,
Southern District,
Division One.

April 23, 1981.

Wm. C. Morgan, Waynesville, for defendants-appellants.

Thomas P. Rose, Jefferson City, for plaintiffs-respondents.

FLANIGAN, Judge.

In 1979 each of the three plaintiffs was granted temporary authority (later made permanent) by the Public Service Commission "to operate as a common carrier of passengers in nine passenger limousine service between Fort Leonard Wood and Waynesville, Missouri, over irregular routes in non-scheduled call-and-demand service." In April 1980 the council of defendant City of Waynesville, a city of the third class,

enacted Ordinance No. 495, Section 3 of which prohibited drivers of limousines from embarking or disembarking passengers within the city except at one designated location, to-wit: "On North side of Business Loop I–44 from a spot 79 feet East of the East end of Roubidoux Bridge for a distance of 75 feet to the East." With formal parts omitted, material portions of the ordinance are set forth below.[1]

In April 1980 plaintiffs instituted this action against the city and three of its officials. The petition sought a declaratory judgment to the effect that Section 3 was void and also sought a temporary restraining order and an injunction against the enforcement of Section 3. The trial court held Section 3, and Ordinance 495 in its entirety, to be void and enjoined the defendants from enforcing "the provisions or any part of" Ordinance 495. Defendants appeal.

The petition attacked the validity of Section 3 on several grounds, including the following: (a) The city lacked statutory authority to enact Section 3; (b) Section 3 is a "local or special law" of the type proscribed by Art. III, Sec. 40(30) of the Missouri Constitution.[2]

■ This court agrees with defendants that the decree of the trial court is too broad in that it invalidates the entire ordinance and not merely Section 3. The petition sought relief only with respect to Section 3 and the plaintiffs' evidence was to the general effect that they had no objection to other portions of the ordinance. Although an ordinance contains an invalid provision, the remainder of the ordinance should not be stricken down as void unless it may be found judicially that the city council would not have passed the entire enactment if it had known of such invalidity. *Pearson v. City of Washington,* 439 S.W.2d 756, 762[14] (Mo.1969); *City of Rolla v. Riden,* 349 S.W.2d 255, 259[7] (Mo.App.1961). This defect in the decree will be corrected by a modification. This court agrees with the trial court that Section 3 is invalid and affirms the decree enjoining its enforcement.

■ It is the position of defendants that Section 3 is constitutional and a valid exercise of the city's police power under several statutes[3] including § 304.120, par. 2(1).[4]

1. "Ordinance No. 495
BE IT ORDAINED BY THE COUNCIL OF THE CITY OF WAYNESVILLE AS FOLLOWS:
SECTION 1. For the purposes of this ordinance, the following words, terms or phrases shall have the respective meaning indicated:
LIMOUSINE SERVICE: Shall mean the business of offering and providing to the public the service of transportation of passengers, for a charge or fee, in nine passenger vehicle in non-scheduled call and demand service, but not including a business which is licensed by the City as a TAXICAB BUSINESS;
DRIVER: Shall mean a person operating a vehicle offering or providing LIMOUSINE SERVICE;
PASSENGER(S): Shall mean persons, other than the driver, who are within a vehicle engaged in LIMOUSINE SERVICE;
PERSON: Shall include natural persons, firms and corporations;
CITY: Shall mean the City of Waynesville, Missouri, including the limits of the City as they may exist at the time of passage of this ordinance and as they may be changed from time to time thereafter.

. . . . .

SECTION 3: No DRIVER shall embark or disembark passengers within the City except at

the following location(s): On North side of Business Loop I–44 from a spot 79 feet East of the East end of Roubidoux Bridge for a distance of 75 feet to the East.

. . . . .

SECTION 5: Any person found guilty of a violation of this ordinance shall be punished by a fine of not more than $500.00 or by imprisonment in the City Jail for not more than three months or by both such fine or imprisonment."

2. Art. III, Sec. 40: "The general assembly shall not pass any local or special law:

. . . . .

(30) where a general law can be made applicable, and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject."

3. Unless otherwise indicated all references to statutes are to RSMo 1978, V.A.M.S.
In addition to § 304.120, par. 2(1), defendants cite § 77.520 and § 94.110.

4. Section 304.120, par. 2 reads:
"2. Municipalities, by ordinance, may:
(1) Make additional rules of the road or traffic regulations to meet their needs and traffic conditions;
. . . ."

Each of defendants' five points asserts that the trial court erred in finding Section 3 to be unconstitutional and invalid. The points, respectively, attack various legal and factual findings contained in the trial court's decree. It is unnecessary for this court to rule upon the correctness of those findings because, in this court-tried case, the decree will be sustained if the result is correct even if based upon an erroneous finding, *Lalumondier v. County Court of St. Francois County*, 588 S.W.2d 197 (Mo.App. 1979) and even if the decree contained erroneous legal or factual reasons for the result reached. *Kenilworth Ins. Co. v. Cole*, 587 S.W.2d 93 (Mo.App.1979).

■ The sole issue on this appeal is the validity of Section 3. In ruling the issue certain general principles come into play. A city, which is a creature of the legislature, possesses only those powers expressly granted, or those necessarily or fairly implied in or incidental to express grants, or those essential to the declared objects of the city, and any reasonable doubt as to whether a power has been delegated to a city is resolved in favor of non-delegation. *City of Kirkwood v. City of Sunset Hills*, 589 S.W.2d 31, 35 (Mo.App.1979). The determination of what considerations properly call for the exercise of police power is primarily a legislative, not a judicial, question and the courts "do not second-guess the judgment of the legislative body as to the wisdom, adequacy, propriety, expediency or policy of the legislative act in question." *City of St. Louis v. Liberman*, 547 S.W.2d 452, 457 (Mo. banc 1977).

■ An ordinance is presumed to be valid, but this is a rebuttable presumption and while an ordinance may be valid in its general aspects, as to a particular state of facts involving a particular owner affected thereby it may be so clearly arbitrary and unreasonable as to be unenforceable. *Parking Sys., Inc., v. Kansas City Down. Redev. Corp.*, 518 S.W.2d 11, 16 (Mo.1974). The issue of reasonableness or arbitrariness must turn upon the particular facts of each

case, *Landau v. Levin*, 358 Mo. 77, 213 S.W.2d 483 (banc 1948), and the person challenging the validity of the ordinance has the burden of proving unreasonableness. *State ex inf. Taylor ex rel. Kansas City v. North Kansas City*, 360 Mo. 374, 228 S.W.2d 762 (banc 1950). If the city's action is reasonably doubtful or even fairly debatable, the court cannot substitute its opinion for that of city council. *Landau v. Levin*, supra.

■ Generally speaking, the regulation of the parking of automobiles on its streets by a city is a valid exercise of the state's delegated police power. *State v. City of Mexico*, 355 Mo. 612, 197 S.W.2d 301, 303 (1946). "Municipalities have been expressly given the power to make rules of the road or traffic regulations to meet their needs. See [§ 304.120, par. 2]. Public safety is involved. It is established that City's reasonable regulation of traffic, including the regulation of the parking of vehicles upon roads used for public travel, is a valid exercise of the police power." *City of St. Louis v. Cook*, 359 Mo. 270, 221 S.W.2d 468, 469[1] (1949).

In *Baker v. Hasler*, 218 Mo.App. 1, 274 S.W. 1095 (1925), this court held an ordinance of the city of Caruthersville to be "unauthorized by statute" and "void because unreasonable." The ordinance made it unlawful for any person, licensed to engage in the business of operating any automobile or jitney bus for the purpose of carrying passengers for hire, to permit or allow "any such automobile or jitney bus to be or remain stationary or parked on any public street or alley within the corporate limits of the city of Caruthersville, except for a reasonably sufficient length of time to permit passengers to embark or disembark from such automobile or jitney bus, ..."

The court said, 218 Mo.App. 1, 274 S.W.2d at p. 1096: "The ordinance at bar does not attempt to regulate the parking of automobiles used for carrying passengers for hire. It prohibits the parking of such automobiles. [§ 304.120, par. 2] authorizes munici-

palities to regulate the parking of vehicles on the streets, but neither this or any other statute authorizes municipalities to prohibit the parking of vehicles on the streets. Said [statute] further provided that—

" 'No ordinance shall be valid which contains provisions contrary to, or in conflict with this act, except as herein provided.'

"And there is nothing therein provided which squints at authorizing such a drastic ordinance as the one at bar."

Although the ordinance in *Baker* is not identical to Section 3 of the Waynesville ordinance, in some respects the latter is even more "drastic." Under the Waynesville ordinance a limousine is permitted to park, but only at one designated place. Unlike the Caruthersville ordinance, the Waynesville ordinance contains no exception with regard to brief stops at other places in the city for the purpose of permitting passengers to board or alight.

This court agrees with the trial court that Section 3 of the ordinance is a "special law" of the type proscribed by Art. III, Sec. 40(30) of the Missouri Constitution, set forth in footnote 2.

The special law provision of our present constitution "differs very little" from the provision which appeared in the Constitution of 1875. *State ex rel. Wagner v. St. Louis Cty., Etc.*, 604 S.W.2d 592, 603 (Mo. banc 1980). The proscription of special laws applies to ordinances as well as to statutes.[5]

"The basis of sound legislative classification is similarity of situation or condition with respect to the feature which renders the law appropriate and applicable. A law

may not include less than all who are similarly situated. If it does, it is special, and therefore invalid, because it omits a part of those which in the nature of things the reason of the law includes." *State ex inf. Barrett ex rel. Bradshaw v. Hedrick*, 294 Mo. 21, 241 S.W. 402, 420 (1922).

"The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes, that makes it special, but what it excludes." *Hagerman v. City of St. Louis*, 365 Mo. 403, 283 S.W.2d 623, 628 (1955). "[T]he judiciary shall use its own processes of logic in determining the presence or absence of reasonableness or unreasonableness in the given classification." *City of Springfield v. Smith*, 322 Mo. 1129, 19 S.W.2d 1, 3 (1929).

A law is not a special law if it applies to all alike of a class,[6] but the classification must not be arbitrary or unreasonable.[7] An ordinance attacked as a special law is presumptively valid,[8] and the burden is on the attacker to prove that the classification is unreasonable. *City of Springfield v. Smith*, supra, 322 Mo. 1129, 19 S.W.2d at p. 10[13].

In some instances ordinances have been upheld although they treated a certain type of vehicle as constituting a separate class to which the ordinance was confined. See 7A Am.Jur.2d Autos. and High. Traf. § 21, p. 208.

In *City of Springfield v. Stevens*, 358 Mo. 699, 216 S.W.2d 450 (1949), a four to three decision, the majority upheld an ordinance prohibiting taxicab drivers from transporting intoxicating beverages in their taxicabs. Rejecting the contention that the ordinance

---

5. *McKaig v. Kansas City*, 363 Mo. 1033, 256 S.W.2d 815 (1953); *Jones v. Walker*, 357 Mo. 476, 209 S.W.2d 147 (1948); *Ex Parte Lockhart*, 350 Mo. 1220, 171 S.W.2d 660 (1943); *City of Springfield v. Smith*, 322 Mo. 1129, 19 S.W.2d 1 (1929).

6. *Hagerman v. City of St. Louis*, 365 Mo. 403, 283 S.W.2d 623 (1955); *City of Springfield v. Stevens*, 358 Mo. 699, 216 S.W.2d 450 (1949); *Jones v. Walker*, 357 Mo. 476, 209 S.W.2d 147 (1948); *City of Springfield v. Smith*, 322 Mo. 1129, 19 S.W.2d 1 (1929).

7. *Hagerman v. City of St. Louis*, 365 Mo. 403, 283 S.W.2d 623 (1955); *McKaig v. Kansas City*, 363 Mo. 1033, 256 S.W.2d 815 (1953); *City of Springfield v. Smith*, 322 Mo. 1129, 19 S.W.2d 1 (1929).

8. *City of Springfield v. Stevens*, 358 Mo. 699, 216 S.W.2d 450 (1949); *Ex Parte Lockhart*, 350 Mo. 1220, 171 S.W.2d 660 (1943); *City of Springfield v. Smith*, 322 Mo. 1129, 19 S.W.2d 1 (1929).

was a special law, the court held that there was a reasonable basis for the classification of taxicabs as distinguished from other vehicles used for the transportation of passengers for hire. The court also stated, 358 Mo. 699, 216 S.W.2d at p. 455, that "it is generally recognized that taxicabs represent a legitimate class for legislative purposes."

In *Jones v. Walker*, 357 Mo. 476, 209 S.W.2d 147 (1948), the court upheld an ordinance of the City of Caruthersville prohibiting taxicabs from stopping or standing more than five minutes, except in emergencies, on certain streets in the congested district of that city. The court held that the ordinance was not a special law and that there was a reasonable basis for the classification between taxicabs on the one hand, and other vehicles, including buses, trucks and private automobiles, on the other. The ordinances in these two cases are dissimilar to the ordinance at hand.

According to the 1970 census of which this court takes judicial notice, *State v. City of St. Robert*, 424 S.W.2d 73, 79[11] (Mo. App.1968), Waynesville has a population of 3,375. Plaintiff Dewey Wilson testified that the limousines he operates are "nine-passenger station wagons," each equipped with a telephone. The driver will pick up customers in response to their telephoned requests and at the place the customer designates. The main gate to Fort Leonard Wood, a military establishment, is approximately 5.7 miles from the limousine stop designated in Section 3. The limousines take military personnel frequently from the gate to various points in Waynesville, including the YMCA, a drug store, a swimming pool and a park. Of these the park is the closest to the limousine stop and it is .15 miles away. The swimming pool is .3 miles from the limousine stop. A "disco place," a favorite destination of soldiers, is over one-half mile from the limousine stop. Other places in Waynesville, to which limousine customers have been taken, are two miles from the limousine stop.

There are three licensed taxicab companies in Waynesville. Taxicabs, which are five-passenger automobiles, pick up and discharge customers any place within the city. The cabs also handle the Waynesville-Fort Leonard Wood traffic.

Plaintiffs testified that their business would be ruined if Section 3 were enforced. Some of the limousine customers are retired people who buy groceries at the commissary on the military base. They would not patronize the limousines if they could disembark with their groceries only at the limousine stop. Passengers accompanied by small children and passengers confronted with adverse weather conditions also would be unwilling to patronize the limousines if Section 3 were enforced.

Plaintiffs' evidence showed that buses, containing 35 or 40 passengers, are operated by Missouri Transit Lines in and through Waynesville. These buses pick up and discharge passengers "any place the passenger wants off." The buses are not restricted to stopping only at the bus station.

Frequently the limousines operate with only one customer and there is no minimum number of customers required for a limousine to answer a call. According to one of the plaintiffs, taxicabs furnish "basically the same services" as the limousines, although the rates charged by the taxicabs are somewhat higher than the limousine rates. One plaintiff testified that no customer had ever asked to be let out at the limousine stop. "There is nothing there but a trout stream."

Seeking to uphold Section 3, defendants say, "having a larger number of passengers entering or being discharged from the limousines would obviously create a potentially more dangerous situation than would exist with a five-passenger taxicab." There was no evidence to support that statement and it is doubtful that discharging passengers from a limousine constitutes more of a hazard than discharging them from a 40-passenger bus. Even defendants say, in their brief, "It may certainly be true that if a limousine operator is only discharging one or two passengers at a time the potential danger is exactly the same as a taxicab operator who discharges one or two passengers."

Although there was no evidence concerning the dimensions of plaintiffs' vehicles, it is reasonable to infer that a vehicle designed to accommodate nine passengers is larger, in at least one dimension, than a five-passenger taxicab. If a limousine is longer than the taxicab, perhaps, which need not be decided, an ordinance prohibiting limousines from "angle parking" might be justified. But Section 3 does not deal with angle parking nor does it deal with the number of passengers actually embarking or disembarking. It deals only with vehicles capable of carrying nine [no more and no less] passengers and mandates that they embark and disembark at one place only.

The ordinance, if given its full scope, would prohibit the embarking or discharging of passengers on a privately owned lot in Waynesville even if the lot were as large as a football field. Even according the ordinance the construction that it was intended to be limited to the use of public streets, this court finds that Section 3 is a special law of the type proscribed by the constitution and that the council, in limiting the operation of Section 3 to limousines, made an unreasonable and arbitrary classification. Section 3 is void and the trial court properly enjoined its enforcement.

The decree of the trial court is hereby modified by limiting its operation to Section 3 of Ordinance 495. That portion of the trial court's judgment which declared Section 3 to be void and enjoined its enforcement is affirmed.

GREENE, P. J., and TITUS, J., concur.