Godfrey P. PADBERG and Virginia A.
Padberg, Appellants,

v.

CUIVRE RIVER ELECTRIC
COOPERATIVE, INC.,
Respondent.

No. 49875.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 25, 1986.

Motion for Rehearing and/or Transfer
Denied April 15, 1986.

Application to Transfer Denied
June 17, 1986.

Michael J. Coleman, Padberg, McSweeney, Slater & Merz, St. Louis, for appellants.

Patrick A. Baumhoer, Beverly J. Figg, Stockard, Andereck, Hauck, Sharp & Evans, Jefferson City, for respondent.

CRIST, Presiding Judge.

Godfrey and Virginia Padberg (owners) sued Cuivre River Electric Cooperative (Electric Co-op) for specific performance of an agreement to provide electricity to owners' non-permanent residence. Electric Co-op counterclaimed for the total cost of providing electricity to owners. Owners appeal from the trial court's judgment awarding Electric Co-op $10,838.70. We affirm.

Owners desired to build a non-permanent residence on land they owned in Warren County. Owners chose a site approximately one mile from the nearest electric service. In early July, 1982, owner contacted Electric Co-op concerning electricity for the new residence. An Electric Co-op employee told owners there would be a $10.00 "set-up" charge. No mention was made of construction costs.

On July 16, 1982, a neighbor of owner accompanied an Electric Co-op employee on the property to lay out the staking for the electric line and determine the location of the electric meter. Owners' neighbor had a key to the property and knew where the construction site was located. Electric Co-op's employee told this neighbor to tell owners there would be construction costs.

On July 22, 1982, owners received an application for membership from Electric Co-op. The application provided:

"... the applicant will comply with and be bound by the provisions of the charter and by-laws of the cooperative and such rules and regulations as may from time to time be adopted by the cooperative...."

Owners read and signed the application and returned it to Electric Co-op with a $5.00 membership fee. Owners subsequently received a letter from Electric Co-op welcoming them as members, and informing them of a $10.00 "set-up" charge. This letter made no reference to any construction charges.

On August 17, 1982, an Electric Co-op employee returned to owners' property to determine the best location for the transformer pole and electric meter, and to stake the electric line. At that time, the footings for owners' house were in, but the foundation had not yet been poured. An Electric Co-op employee informed owners by phone in late August of 1982 there might be construction charges. Subsequently, owners received a letter dated August 23, 1982, informing them of estimated construction charges of $7,862. Owner requested a change in the location of the electric line, resulting in a revised cost estimate of $8,561. A "close-out" sheet, dated November 24, 1982 and introduced into evidence, indicated the total actual cost to be $10,838.70.

Owners subsequently filed suit seeking specific performance of an oral agreement to provide electricity without additional construction charges. Owners paid $8,561 with the understanding it would not prejudice their rights in this lawsuit.

Owners raise three points in this appeal. In their first point relied on, owners assert the judgment denying their claim for specific performance is against the weight of the evidence. Owners' primary contention is that Electric Co-op's counterclaim was not supported by substantial evidence, because they clearly established an oral contract to provide electric service for $10.00. We disagree.

■ Clearly, owners established a contract between themselves and Electric Co-op, under which Electric Co-op agreed to provide electric service to owners' non-permanent residence, in exchange for owners' agreement to pay for the service. We do not believe these obligations arise from any oral statements of Electric Co-op representatives, however. When owner called Electric Co-op to inquire about service, Electric Co-op's employee stated there would be a $10.00 set-up charge, and owner would have to become a member of Electric Co-op. Electric Co-op sent owners a membership application, which owners read and signed, and returned with the application fee.

■ Owners' and Electric Co-op's obligations arise under the terms of this application for electric service. The oral conversations prior to owners' sending in the application were clearly introductory in nature, and did not constitute an independent oral contract to provide electric service. In their application for service, owners agreed to be bound by the "rules and regulations" of Electric Co-op. A written policy statement of Electric Co-op provided that construction expenses in excess of the average investment per member incurred in extending service to a non-permanent residence are at the expense of the member requesting such service. We believe this written policy statement is a "rule or regulation" of Electric Co-op, and owners are therefore bound by it. While Electric Co-op's representatives could have inquired earlier as to whether owners' residence was to be permanent or non-permanent, and advised them of the possibility of substantial con-

struction costs, Electric Co-op did inform owners of the estimated construction costs once they became available, and owners were treated no differently than other owners of non-permanent residences. Electric Co-op's judgment on its counterclaim is supported by substantial evidence.

■ In their second point relied on, owners assert the trial court erred in awarding Electric Co-op $10,838.70 on its counterclaim, because this award was unsupported by the evidence. The trial court awarded $10,838.70, minus $8,561 already paid by owners, for a net judgment of $2,277.70. The $10,838.70 amount was obtained from the "close-out" sheet, which is an itemized computer print-out of the costs associated with each project, computed by a work order clerk after the work is finished and all the charges are brought into the office. The "close-out" sheet was prepared in the ordinary course of Electric Co-op's business. Owners did not object to the close-out sheet at trial. We believe the amount of the judgment, $10,838.70, is supported by substantial evidence.

In their final point relied on, owners assert a letter sent to the parties by the trial court, announcing its decision and requesting Electric Co-op's attorney to prepare a proposed decree, constitutes findings of fact and conclusions of law, and is replete with error. Whether this letter constitutes formal findings and conclusions is of no import. We believe the decree is correct and must therefore be sustained. *Wilson v. City of Waynesville*, 615 S.W.2d 640, 643 (Mo.App.1981).

Judgment affirmed.

SMITH and SNYDER, JJ., concur.