### Ex PARTE ED. POLITE.

No. 8355.   Decided January 23, 1924.

Rehearing denied April 30, 1924.

1.—City Charter and Ordinance—Jitney Service—Use of Streets.

The specific claim of the relator is that the ordinance in question confers upon those engaged in the jitney service the right in some of the streets of the City of Houston, which is embraced within the meaning of sections 17 and 18 of the Charter, which the City Council has power to confer only when it pursues the procedure named in the sections mentioned. While this may be conceded, yet the ordinance was passed in accordance with section 7 of the charter which authorized its passage without such restriction

2.—Same—Franchise—License.

The argument of relator that the ordinance grants a franchise to the jitney service owners and that it does not authorize a real license is untenable.

3.—Same—Police Power—Municipal Corporation.

A municipal corporation, under its general powers, has the right to make the distinction between those operators of automobiles who use the

street for ordinary purposes, and those who use them in the pursuit of their occupation or business. Following: Green v. City of San Antonio, 178 S. W. Rep., 7, and other cases.

### 4.—Same—Limitations—Restrictions.

The restrictions upon the power of the agents of the government contained in sections 17 and 18 of said charter relate to some control conferred which limits the authority of the city over the thoroughfares or their use for a definite period beyond the control of the city, and not merely a temporary or revocable permission.

### 5.—Same—Use of Streets—Jitney Service.

The court discerns nothing in the ordinance granting the use of the streets inconsistent with the right of travel or with the rights of abutting owners; it does not vest any exclusive privilege nor limit the power of the city over the control of the streets. and confers no privilege or immunity of a public nature to jitney service men, but restricts and prevents them from conducting their business in the streets without license, etc.

### 6.—Same—Franchise—License.

This court is impressed with the view that the right sanctioned by the ordinance is wanting in the essential element of a franchise, but that it may be properly classified as a license or privilege and does not come within the purview of sections 17 and 18 of said charter, but may be exerted by ordinance enacted in the ordinary way prescribed by section 7 of the charter.

Appeal from the County Court at Lay of Harris. Tried below before the Honorable Murray B. Jones.

Appeal from a judgment of the County Court refusing to discharge the relator from arrest under a violation of the city ordinance of Houston, under habeas corpus proceedings.

*S. O. Lovejoy,* for appellant.—Question of invalidity of ordinance: Ex Parte Adlof, 215 S. W. Rep., 222; Span v. City of Dallas, 189 id., 999; Ex Parte Patterson, 58 id., 1011.

*Tom Garrard,* Attorney for the State and *Grover C. Morris,* Assistant Attorney for the State, and *F. R. Switzer* and *Ray Scruggs,* for Respondent.—Cited: Lindsley v. Dallas Consolidated Street Ry., 207 S. W. Rep., 212; Ex Parte Bogle, 179 id., 1193; Ex Parte Sullivan, 178 id., 537.

MORROW, PRESIDING JUDGE.—Relator is restrained under a charge of violating the provisions of an ordinance of the City of Houston which forbids one engaged in ''jitney service'' from operating vehicles for hire upon the streets of Houston upon certain designated routes and at certain stated intervals and with fixed termini, without first obtaining a license therefor. The ordinance prescribes certain things that must be done to acquire a license, vests in the city council certain discretion with reference to the issuance of such license and provides, among other things, the following:

97 T. C.--21.

"Upon presentation to the City Council of the application here-inabove prescribed, complying with the requirements of this ordinance, and the deposit of the license fee herein provided, the City Council may, after investigation of such application, if it appears to the Council in the exercise of its discretion the interests of the public require the permitting and granting thereof, grant a license or licenses, as called for therein, and it shall be thereafter, as long as the terms of this ordinance are in force, lawful for the person named in the license or licenses to operate, in accordance with the terms thereof, such vehicle or vehicles in the jitney service, unless such license be suspended or revoked as herein provided, and if any such vehicles engaged in the jitney service in the City of Houston fail to comply with the regulations pertaining to said business, or fail to give efficient service, or to protect the safety of passengers and the public in accordance with the laws of the State of Texas and the ordinances of the City of Houston, and the said owner of such vehicle should be convicted in the Corporation Court for any offense hereunder, or under the traffic laws of the City of Houston, said Judge of the Corporation Court may, in addition to the fine, suspend or revoke the license held by the owner of said vehicle for its operation in said business."

In the same ordinance are prescribed regulations upon which the license to engage in the jitney service may be obtained, the amount of fee required, and the conditions upon which the City may refuse the license or after its issuance, revoke or cancel it.

The relator contends that the ordinance is void because of its opposition to Sections 17 and 18 of the charter of the City of Houston, which charter is found among the special laws passed by the 29th Legislature, page 140. In Section 17 of the charter is found this language:

"The right of control, easement, user and the ownership of and title to the streets, highways, public thoroughfares and property of the City of Houston, its avenues, parks, bridges and all other public places and property are hereby declared to be inalienable, except by ordinance duly passed by a majority of all the members of the City Council and approved by the Mayor; and no grant of any franchise or lease, or right to use the same, either on, along, through, across, under or over the same by any private corporation, association or individual, shall be granted by the City Council unless submitted to the vote of the legally qualified voters of said city, for a longer period than thirty years."

In other provisions of that section it is made obligatory upon the City Council, upon request of the party making the application for one of the enumerated privileges, to call an election to determine whether or not the privilege shall be granted. It is also declared that the City Council may, of its own motion, call such an election.

It is specifically declared that no such franchise shall ever be granted until it has been read in full at three regular meetings of the council.

Section 18 of the charter provides for a referendum and declares that no ordinance granting any of the privileges named shall be passed until it has been published in the daily newspapers in the City of Houston at least once a week for three consecutive weeks, and that thirty days shall elapse after the passage before it shall become effective and that if during the interim a petition signed by a given number of legally qualified voters shall be presented, an election shall be ordered to determine whether or not the ordinance shall become effective.

In Section 2 of the charter general powers are bestowed to parties to enforce all ordinances necessary to protect health, life and property of the inhabitants of the City and to enact and enforce all ordinances upon any subject which are inconsistent with the laws of the State or with the provisions of the charter; "provided, further, that the specification of particular powers shall never be construed as a limitation upon the general powers herein granted, it being intended by this Act to grant to and bestow upon the inhabitants of the City of Houston full power of self-government, and it shall have and exercise all powers of municipal government not prohibited to it by this charter or some general law of the State of Texas, or by the provisions of the Constitution of the State of Texas." In addition to this, there is given specific power to regulate automobiles.

The specific claim of the relator is that the ordinance in question confers upon those engaged in the jitney service the right in some of the streets of the City of Houston, which is embraced within the meaning of Sections 17 and 18 of the charter, which the City has power to confer only when it pursues the procedure named in the sections mentioned. It is conceded that in the present instance that was not done, but that the ordinance was passed in accordance with Section 7 of the charter, which authorizes the passage of ordinances without the restrictions touching publication and referendum embraced in said sections 17 and 18.

In argument relator insists that the ordinance grants a franchise to the "jitney service" owners and that it does not authorize a mere license. That it is difficult to formulate an accurate and comprehensive definition of the term "franchise" is recognized by courts and text-writers.

"The word 'franchise' is generally used to designate a right or privilege conferred by law. Many attempts have been made to define it, and there is not a little variation in the terms used." (R. C. L., Vol. 12, p. 173).

"To be a franchise the right possessed must be such as cannot be exercised without the express permission of the sovereign power—a

privilege or immunity of a public nature which cannot be legally exercised without legislative grant." (R. C. L., Vol. 12, p. 174).

"A franchise has been defined to be a particular privilege which does not belong to the individual or corporation as of right, but is conferred by a sovereign or government upon, and vested in, individuals or a corporation. The essential element of a franchise is that it should be a privilege, right, or power which the individual cannot exercise as of right, and which depends for its lawful existence upon a grant from the government." (Dillon on Municipal Corporations, Vol. 3, Sec. 1210).

One of the purposes for which the streets are maintained is for the use of persons operating vehicles, including automobiles. In the absence of some express declaration of the law-making power to the contrary, nothing is perceived that would prevent the relator from conducting his "jitney business" upon the streets and upon particular sections thereof. The City of Houston, in the present instance, has enacted an ordinance prohibiting such use of its streets and thoroughfares by those engaged in the "jitney service" unless certain conditions prescribed by the city are met and observed; and the city has reserved the right to deny the privilege or to terminate it as the public interest demands. Such are the terms of Section 5 of the ordinance under consideration.

A municipal corporation, under its general powers, has the right to make the distinction between those operators of automobiles who use the streets for ordinary purposes and those who use them in the pursuit of their occupation or business. This principle has been applied to the operation of automoblies for hire upon the streets of the City of San Antonio in the case of Greene v. City of San Antonio, 178 S. W. Rep., 7, and in Ex parte Parr, 82 Texas Crim. Rep., 525, 200 S. W. Rep., 404, and in many other instances as shown by the citation of authorities in the cases mentioned. See also Ruling Case Law, Vol. 2, p. 1173, and Vol. 1 of the Supplement, p. 714; also Berry on Automobiles, 3rd Ed., Sec. 1518.

Sections 17 and 18 of the charter are designed to prevent the city government from parting with the control, easement, user and ownership of the streets without the consent of the citizens of the city should they desire to withhold their sanction, and to provide means of ascertaining their will by referendum election. The restrictions upon the power of the agents of the government contained in Sections 17 and 18, supra, relate to some control conferred which limits the authority of the city over the thoroughfares or their use for a definite period beyond the control of the city, and not merely a temporary or revocable permission. Dillon on Municipal Corporations, Vol. 3, p. 1906, note.

Nothing is discerned in the ordinance granting a use of the streets inconsistent with the right of travel or with the rights of abutting

owners. It does not vest any exclusive privilege nor limit the power of the city over the control of the streets. In fact, it confers no privilege or immunity of a public nature to "jitney service" men, but, as applied to them, is restrictive in preventing them from conducting their business in the street, a privilege which they might legally exercise except for the intervention of the law-making power of the city.

This court is impressed with the view that the right sanctioned by the ordinance is wanting in the essential elements of a franchise, but that it may be properly classified as a license or privilege, of which it is said:

"License, in its general sense, means a right or permission granted by some competent authority to do what is unlawful at common law, or is made so by statute or ordinance, including the one authorizing or requiring the license. A privilege is the exercise of an occupation or business which requires a license from some proper authority, designated by some general law, and not free to all, or any, without such license. It follows that an occupation or privilege license is the permission granted to an individual by a competent authority to engage in and carry on the particular business or calling to which it refers. (Cyc. of Law & Proc., Vol. 25, p. 597).

The ordinance is regarded a regulation of the use of vehicles upon the thoroughfares of the city, referable to the general power of the municipality, not one coming within the purview of the restrictions embraced in Sections 17 and 18, but one that may be exerted by ordinance enacted in the ordinary way prescribed by Section 7 of the charter.

For the reasons stated, the judgment holding the relator amenable to the complaint is affirmed.

*Affirmed.*

[Rehearing denied April 30, 1924. Reporter.]