Ex parte Bruce Ross Ballentine, Petitioner, v. Thos. Nester, City Marshal.—No. 38043.—164 S. W. (2d) 378.

Court en Banc, August 6, 1942.

Rehearing Denied, September 8, 1942.

*George W. Curran* and *Michael J. Doherty* for petitioner.

60

*Joseph F. Holland,* City Counselor, and *Oliver Senti,* Associate City Counselor of St. Louis, for respondent.

*Wilbur B. Jones,* and *Sam Elson, amicus curiae; Salkey & Jones* of counsel.

64

66

TIPTON, J.—Habeas corpus. On January 28, 1942, the petitioner was convicted in the St. Louis City Court for violating Section 5340 of St. Louis City Ordinance 41804 (being an ordinance amending Article 36 of Chapter 34, Revised Code, City of St. Louis, 1936, Ordinance 40999, as amended by Ordinances 41302, 41558, and 41604) relating to the Division of Smoke Regulation, and he was fined the sum of $100.00 and costs. The petitioner refused to pay the fine, and he was thereupon ordered into the custody of Thomas Nester, City Marshal of the City of St. Louis, in accordance with an order of execution, detention, and judgment issued by that court.

Thereafter, he filed in this court a petition for a writ of habeas corpus, in which ■■■ he attacks the validity of that ordinance for the reasons that it conflicts with the provisions of the 14th Amendment of the Constitution of the United States; Article II, Section 30,

and Article III, Section 1, Article IV, Section 53, Subsections 26 and 32 of our State Constitution; Sections 6540, 7442, and 14619, Revised Statutes of Missouri; and Article IV, Section 2, and Article XIII, Section 14, Subsection (a) of the St. Louis City Charter.

Section 5340 of the Ordinance above referred to reads as follows:

"Section 5340. Importation, Sale, Use or Consumption of Certain Coals Prohibited. It shall be unlawful to import, sell, offer for sale, expose for sale, exchange, deliver or transport for use and consumption in the City of St. Louis, or to use or consume in the City of St. Louis, any coal in sizes which will pass through a two inch circular opening or its equivalent, which contains in excess of twelve per cent ash or two per cent sulphur on a dry basis, unless such coal, before importation or sale in the City of St. Louis has been cleaned by a process known as washing, so that when said coal is so washed it shall contain no more than twelve per cent ash on a dry basis; and such coal can only be used or consumed in approved mechanical fuel-burning equipment; provided the provisions of this section shall not apply to any coal with a volatile content of less than 23 per cent on a dry basis. The term 'washing,' as used in this section, is meant to include purifying, cleaning or removing impurities by mechanical processes of removing refuse from coal, regardless of the cleaning medium used. (a) It shall be unlawful to import, sell, offer for sale, expose for sale, exchange, deliver, or transport for use and consumption in the City of St. Louis, or to use or consume in the City of St. Louis, any solid fuel for hand-firing or surface burning types of equipment which does not meet the standard of a smokeless solid fuel as set forth in this section. (b) Smokeless solid fuel for the purpose of the enforcement of this ordinance shall be considered a fuel the volatile content of which is 23 per cent or less on a dry basis. Provided, however, that if a fuel contains volatile matter in excess of 23 per cent on a dry basis, it shall be acceptable under the terms of this ordinance provided that it meets the same standards in regard to smoke production as that of a fuel containing less than 23 per cent volatile matter on a dry basis, and subject to the following conditions in order to ascertain whether or not such standards are met: (1) Complete plans and specifications of such process must be submitted to the Commissioner of Smoke Regulation, and from time to time any additional information he may reasonably require regarding the product. (2) An adequate supply of the finished product must be made available to the Commissioner of Smoke Regulation to conduct whatever tests he deems necessary to establish its value as a smokeless solid fuel. (3) Any person, firm or corporation whose product is submitted to such tests must pay in advance all expenses necessary to the attendant tests. The Commissioner of Smoke Regulation shall be authorized to publish a list of brands or trade names of smokeless solid fuels as defined under this section, and to compile and publish from

time to time statistics in reference to the supply, prevailing prices and other pertinent facts for the guidance of the public."

The information under which the petitioner was convicted charges the petitioner as follows: "In this to-wit: In the City of St. Louis, and State of Missouri, on the 26th day of January, 1942, the said Bruce Ross Ballentine did then and there, to wit: use and consume, import, sell, offer for sale, expose for sale, exchange, deliver and transport for use and consumption in the City of St. Louis and to be used and consumed in said City, solid fuel for hand-firing equipment, said fuel having a volatile content in excess of 23 per cent on a dry basis and not acceptable under the standards in regard to smoke production as that of a fuel containing less than 23 per cent volatile matter on a dry basis and not subject to the conditions to ascertain whether or not such standards were met as provided in said sections and Ordinance. Contrary to the Ordinance in such cases made and provided."

We have been favored with able and exhaustive briefs by petitioner, respondents, and amicus curiae.

The petitioner's first point in his brief is that Ordinance 41804 is void because its enforcement is delegated to the Division of Smoke Regulation instead of the Health Department; therefore, it is contra to Section 6540, R. S. (Mo.) 1939 and Article XIII, Section 14, Subsection (a) of the City Charter.

Section 6540, supra, prescribes the powers and duties of the Board of Health in cities of the first class. Assuming, but not deciding, that ordinance regulating smoke in cities of the first class must be under the supervision of the Board of Health, this section would have no application to the City of St. Louis, because that city is governed by a special charter, and is not a city of the first class. Kansas City v. Stegmiller, 151 Mo. 189, 52 S. W. 723; State ex rel. Hussman v. City of St. Louis, 319 Mo. 497, 5 S. W. (2d) 1080.

Petitioner, also, contends that the enforcement of this ordinance should be under Article XIII, Section 14, of the City Charter, which defines the duties of the Health Commissioner. We do not agree with the petitioner's contention. Section 5331 of the Smoke Regulation Ordinance creates the Division of Smoke Regulation in the Department of Safety. The duties of the Department of Safety are defined by Article XIII, Section 15 of the City Charter. Subsection (e) of that section provides, "There shall be a division of building and inspection. It shall superintend . . . the abatement of the smoke nuisance . . . The head of said division shall be known as the Building Commissioner." Therefore, the Smoke Regulation Ordinance is placed in the Department in accordance with the express provisions of the City Charter.

Petitioner contends that the ordinance is not and cannot be a bona fide health regulation because it does not regulate noxious or

deleterious gases that are given off in the burning of coal and the injury that results to the individual who breathes these gases depends upon the chemical components of the substance burned and not on the manner of burning the coal. It is true the Ordinance makes only the emission of dense smoke unlawful; it contains no provision that tends to regulate or prevent the discharge of deleterious gases into the air. The legislative authorities may classify with reference to an evil to be prevented, and legislation designed to prevent one evil is not void because it does not prevent another. "It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named." Patsone v. Pennsylvania, 232 U. S. 138, l. c. 144, 34 S. Ct. 281; quoted with approval in Blind v. Brockman, 321 Mo. 58, 12 S. W. (2d) 742. A lawmaking body "may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are allowed." Central Lumber Company v. South Dakota, 226 U. S. 157, l. c. 161, 57 L. Ed. 164. We hold that the fact the ordinance does not regulate deleterious gases that are emitted into the air does not invalidate it.

While we do not understand that the petitioner claims the City of St. Louis is without power to pass an ordinance to abate dense smoke, he does contend that this particular ordinance is void. He makes the point that "an ordinance which, without statutory authority, divides bituminous coal into five (5) classes and definitely and distinctly prohibits the use of and all traffic in coal of certain sizes, kinds or qualities is not valid, for it is the settled law of this State that a municipal corporation has no power by ordinance to declare that to be a nuisance which is not such in fact, or to suppress in part or in toto any business within its limits which is not a nuisance per se."

The City of St. Louis is a municipal corporation and can exercise only such "powers as have been specifically conferred on it by special charter or general law, and in either express terms or by reasonable implication." See Arkansas-Missouri Power Corporation v. City of Kennett, 348 Mo. 1108, 156 S. W. (2d) 913, and cases cited therein.

Our state legislature has declared that in all cities having over 100,000 inhabitants, "The emission or discharge into the open air of dense smoke within the corporate limits of any city of this state is hereby declared to be a public nuisance." Section 7575, R. S. (Mo.) 1939. While Section 7576 provides that "all cities to which the provisions of the preceding section are applicable are hereby empowered to enact all necessary or desirable ordinances, not inconsistent with the provisions herein, nor the Constitution, nor any general law of this state, in order to carry out the provisions of said section." The City of St. Louis has over 100,000 inhabitants, and, therefore, it has

the power ▓▓▓ to enact ordinances to abate the public nuisance of having dense smoke discharged into the open air within its corporate limits. It is to be noted that the above sections do not state the method or details of exercising this power granted to the cities to which these sections are applicable. ". . . the rule is firmly established that where there is an express grant to a city without the method or details of exercising such power prescribed, the city council has authority to exercise the power granted it in any reasonable and proper manner. State ex rel. City of Memphis v. Hackman, 273 Mo. 670, 202 S. W. 7." Dodds v. Kansas City, 347 Mo. 1193, 152 S. W. (2d) 128, l. c. 131; Arkansas-Missouri Power Corporation v. City of Kennett, supra. There can be no doubt that under the above sections that the legislative department of the City of St. Louis has the power to abate the smoke nuisance in the city by any reasonable method. To accomplish that object, it enacted Section 5340, supra. This section sought to obtain that object by regulating the kind of coal that can be burned in that city. That is, by dividing bituminous coal into five classes, regulating the size, kinds, and qualities of coal that can be used, and the types of furnaces in which certain coals may be burned. "That the smoke nuisance is directly contributed to and almost wholly caused by burning soft or bituminous coal is a matter of general knowledge, . . . Ordinary soft coal contains from 32 to 40 per cent of volatile matter. Dense smoke is caused by the volatile matter in the coal being distilled without being burned, and the tendency of coal to produce dense smoke depends on the amount of volatile matter in coal. 'Smokeless coal' is a trade or commercial term applied to a grade of soft coal in which the volatile matter runs from 16 to 21 per cent." State v. Chicago, M. & St. P. Ry. Co., 114 Minn. 122, 130 N. W. 545, l. c. 547. The public policy or wisdom of a regulation in regard to the use of soft coal is for the legislature to determine and not the courts. Our state legislature, by Section 7576, supra, has granted the city power to abate dense smoke that it has declared by Section 7575, supra, to be a public nuisance. See State v. Tower, 185 Mo. 79. In Nelson v. City of Minneapolis, 127 N. W. 445, it is said: "The methods, regulations, and restrictions to be imposed to attain, so far as may be, results consistent with the public welfare, are purely of legislative cognizance. The courts have no power to determine the merits of conflicting theories, nor to declare that a particular method of advancing and protecting the public is superior or likely to insure greater safety or better protection than others. The legislative determination of the methods, restrictions, and regulations is final, except when so arbitrary as to be violative of the constitutional rights of the citizens."

From what we have just said, it follows that the City of St. Louis has been granted the power under Sections 7575 and 7576 to pass the ordinance in question, and it is a valid regulation of the dense smoke

nuisance, unless it violates some statutory or constitutional provision which we will later discuss. Having determined that the city has the power to enact an ordinance to regulate the dense smoke nuisance under the above ·sections of our state laws, it will be unnecessary to determine if it has such power under its charter.

Petitioner claims that the ordinance "is class legislation in that it arbitrarily distinguishes between the kinds of apparatus in which coal may be burned and grants to the operators of one kind of apparatus the privileges of using grades of coal, the use of which is denied to those possessing other and different kinds of apparatus."

Petitioner was convicted of using coal having a volatile content in excess of 23 per cent on a dry basis in hand firing equipment in violation of Section 5340, supra, while under this ordinance the same coal mechanically fired would be lawful; therefore, petitioner contends that the ordinance is void because it arbitrarily‐creates classes of bituminous coal. [There are other classifications of coal under this section.]

Is Section 5340, supra, void because it arbitrarily creates classes of bituminous coal that may be used under certain conditions within the limits of the City of St. Louis?

"A classification for legislative purposes must rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed. It cannot be an arbitrary classification. The Legislature may pass laws applicable to a particular class of individuals, but such laws must bear equally upon all individuals coming naturally within this class. The Legislature may not classify by characteristics or qualities which might distinguish individuals unless that distinction applied to the particular matter under consideration." In re French, 315 Mo. 75, 1. c. 82, 285 S. W. 513.

" 'There is, therefore, no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmental purposes, there cannot be an exact exclusion or inclusion of persons and things.' It is 'sufficient to satisfy the demand of the Constitution if a classification is practical and not palpably arbitrary.' [Louisville and Nashville R. R. v. Melton, 318 U. S. 1. c. 55.] 'The selection, in order to become obnoxious to the Fourteenth Amendment, must be arbitrary and unreasonable, not merely possibly, but clearly and actually so.' [Bachtel v. Wilson, 204 U. S. 1. c. 41.] Again, 'a classification may not be merely arbitrary, but necessarily there must be great freedom of discretion even though it result in ill-advised, unequal, and oppressive legislation.' [Heath & Milligan Co. v. Worst, 207 U. S. 1. c. 354; Callahan v. St. Louis Merchants' Bridge Terminal Ry. Co., 170 Mo. 473, 1. c. 494; Holden v. Hardy, 169 U. S. 1. c. 393, et seq.; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61; St. Louis Cons. Coal Co. v. Illinois, 185 U. S. 203.]

"The Legislature in the exercise of its power to classify is not required to trace with a hair line the boundaries of the class to which the resulting enactment shall apply." Hawkins v. Smith, 242 Mo. 688, l. c. 695, 147 S. W. 1042.

The state legislature has declared that the discharge of dense smoke in the City of St. Louis to be a nuisance per se. State v. Tower, supra. This ordinance was enacted to prevent that nuisance and not to punish the maintenance of the nuisance.

Coal burned mechanically tends to create less smoke than the same coal burned by hand. Coal burned mechanically is distributed evenly in the fire box of the furnace and would tend to produce less smoke than coal that is distributed unevenly by hand, and this is true even if firing by hand is carefully performed. Since there is a reasonable classification between how the same coal is burned, and it applies equally and uniformly to all coal users in the City of St. Louis, we cannot say that it is an arbitrary classification.

Our view is supported by the case of State v. Chicago, M. & St. P. Ry. Co., supra, l. c. 550, wherein it is said: "Legislation designed to prevent a smoke nuisance, to be equal and uniform, need not apply alike to 'all soft coal users,' without regard to the widely different conditions, relating to the resulting smoke, surrounding such use by different users. The proper basis of the classification adopted by the Legislature is the relationship of burning soft coal in the different kinds of plants to the smoke nuisance."

We hold that as Section 5340, supra, classified coal to be used according to its ash, sulphur, and volatile contents, and the type of furnace in which these various classifications of coal may be burned bears a reasonable relation to the dense smoke nuisance, the ordinance is not an arbitrary classification as it applies equally to all users of coal of the same classification.

The next point raised by the petitioner in his brief is (a) that the ordinance requires the user of coal to analyze its contents before he can purchase the coal, and (b) that a seller of coal must know before he sells coal that the purchaser has a proper furnace to burn the particular coal sold, and, therefore, the ordinance is unreasonable and void.

The petitioner goes on to state instances where an innocent purchaser may unwittingly have purchased coal not acceptable under the prescribed standards, and where the seller may have innocently sold coal to a customer who did not have a furnace acceptable under the prescribed standards. The record does not present any such questions. When the petitioner is charged with an offense innocently committed under the hypothesized circumstance or that when charged with violating Section 5340, supra, that his defense is that he innocently violated ▮▮▮▮ this section will be the appropriate time to deal with these academic questions.

However, we cannot help but call attention to that part of Section 5340, supra, which reads:

"The commissioner of smoke regulation shall be authorized to publish a list of brands or trade names of smokeless solid fuels as defined under this section, and to compile and publish from time to time statistics in reference to the supply, prevailing prices and other pertinent facts for the guidance of the public."

Petitioner's fourth point as stated in his brief is as follows: "(a-b) Nowhere in the statutes, Sections 7575 and 7576, R. S. Mo. 1939, which authorizes the city to legislate in matters relating to dense smoke, or in the charter, is the power granted to the city assembly to arbitrarily outlaw the use of coal of any particular grade, size or quality. On the contrary, the provisions of Section 14619, R. S. Mo. 1939, expressly require the use of Missouri coal, by Missouri institutions of the kind located in St. Louis under stated conditions . . . ." We have just ruled that the city under its police power may classify coal to be used according to its ash, sulphur, and volatile contents, and that this classification bears a reasonable relation to the dense smoke nuisance referred to in Sections 7575 and 7576, supra, and that as these sections do not prescribe the methods or details as to how to abate the smoke nuisance, the city has the right to use any reasonable method to attain the desired result.

Nor do we think this section, in regulating the use of coal, violates the due process and the equal protection of the 14th Amendment of the Federal Constitution. In passing upon a somewhat similar ordinance, in the case of Northwestern Laundry v. Des Moines, 239 U. S. 486, 36 S. Ct. 206, 6 L. Ed. 396, l. c. 401, the Supreme Court of the United States said:

"So far as the Federal Constitution is concerned, we have no doubt the state may, by itself or through authorized municipalities, declare the emission of dense smoke in cities or populous neighborhoods a nuisance and subject to restraint as such; and that the harshness of such legislation, or its effect upon business interests, short of a merely arbitrary enactment, are not valid constitutional objections. Nor is there any valid Federal constitutional objection in the fact that the regulation may require the discontinuance of the use of property, or subject the occupant to large expense in complying with the terms of the law or ordinance."

Section 14619, supra, requires that state institutions supported by public funds are required to use coal mined in Missouri under certain conditions. The petitioner in this case is not an institution such as is defined by this section. He may assert his own rights, but he cannot assert the rights of others. State ex rel. Crandall v. McIntosh, 205 Mo. 589, 103 S. W. 1078.

The last assignment of the petition is that the ordinance is void because it delegates legislative power to the Commissioner of Smoke Regulation and the Appeal Board.

He bases this contention on the fact that Section 5340 contains a proviso that if fuel contains volatile matter in excess of 23 per cent on a dry basis, it shall be acceptable under the terms of the ordinance, provided that it meets the same standards in regard to smoke production as that of a fuel containing less than 23 per cent volatile matter on a dry basis, and prescribes the conditions with which the applicant must comply before a test is made.

Section 5348 of the ordinance provides that the persons aggrieved by any decision, ruling, or order of the Commissioner may take an appeal to the Appeal Board established by Section 5337. He says that the above provisions of the ordinance constitute an unlawful delegation of legislative powers to the Commissioner and to the Appeal Board.

We may again point out that the record in this case shows that the petitioner was convicted for violation of the specific standard prescribed in express terms by Section 5340, supra. The case at bar is not one where the petitioner has refused to comply with an administrative regulation, or has failed to meet a standard prescribed by an administrative official.

In State v. Armour Pharmacy, 152 S. W. (2d) 67, l. c. 69, we said:
". . . one being prosecuted for the violation of an offense prohibited by the statute itself is not entitled to question the constitutionality of provisions authorizing certain officials to make rules and regulations for the enforcement of the act or provisions authorizing ▮ searches and seizures not involved in the charge; . . ."

On authority of the above case, we rule that the petitioner is not entitled to raise this constitutional question, as he has not suffered in any way by reason of these provisions of the ordinance. But if he had suffered by such police regulations, his contentions would fall within the rule announced in the case of Ex Parte Williams, 345 Mo. 1121, 139 S. W. (2d) 485, which holds that ordinances need not prescribe rules of action by public officials granting discretion relating to administration of police regulations and necessary to protect public morals, health, safety, and general welfare, or requiring consideration of personal fitness.

For the reasons above stated, it follows that the petitioner should be remanded to the City Marshal of the City of St. Louis. It is so ordered. All concur except *Hays, J.,* not sitting.