Ex parte WILLIAM LOCKHART, Petitioner.—No. 38228.—171 S. W. (2d) 660.

Court en Banc, April 5, 1943.

Rehearing Denied, May 4, 1943.

*Al F. Gerritzen* and *Henry J. Mueller* for petitioner.

*Joseph F. Holland,* City Counselor, and *Oliver Senti,* Associate City Counselor, for respondent.

 TIPTON, J.—Habeas Corpus. Petitioner was convicted in the city court of the City of St. Louis for violating Ordinance No. 42217 of that City in that he was engaged in carrying on the business of a public mover without first having paid for and obtained a license from the License Collector of the City. He was fined the sum of twenty-five dollars, which he refused to pay, and was thereupon ordered into the custody of Thomas E. Nester, City Marshal of the City of St. Louis.

Also, he was convicted in that court of carrying on the business of public mover contrary to Sections 1415, 1419, and 1423 of Ordinance No. 41386 of the Revised Code of 1936 for the City of St. Louis. Respondent's return admits he is illegally restrained under this latter conviction and should be discharged, because these sections had been repealed.

The proceeding before us is confined to his conviction under Ordinance No. 42217. This Ordinance contains many provisions and we will not set it out, but will quote the title, a fair summary of its provisions, which reads:

"An ordinance regulating the business of moving uncrated household goods and furniture, office furniture and fixtures and store furniture and fixtures, for or without compensation, in the City of St. Louis; defining public movers; describing the kind of vehicles to be used by public movers; requiring a certificate of convenience and necessity from the Board of Public Service by said public movers; providing for a license and public liability and cargo insurance policies; authorizing the Director of Streets and Sewers to inspect said vehicles; containing a penalty and an emergency clause and repealing Sections 1415 to 1427, inclusive, of the Revised Code of St. Louis 1936."

Petitioner first contends that since this ordinance provides for an occupation tax, the City is without power to enact it. The petitioner relies upon Section 7440, R. S. (Mo.) 1939, which reads:

"SEC. 7440. BUSINESS NOT TAXABLE, WHEN.—No municipal corporation in this state shall have the power to impose a license tax upon any business avocation, pursuit or calling, unless such business avocation, pursuit or calling is specially named as taxable in the charter of such municipal corporation, or unless such power be conferred by statute."

 It is conceded that the license tax here sought to be imposed is an attempted exercise of the taxing power, and not purely a police regulation. Section 7440, supra, is, "in effect, a legislative finding and declaration of policy that, unless the business avocation, pursuit or calling sought to be taxed by the municipal corporation is specially named as taxable in the charter, or unless such power is conferred by statute, the power to tax is not clearly and unambiguously delegated, and therefore consistent with the general sound pol-

icy of the law, it cannot be exercised. We think this statute applies to all municipal corporations whether under general or special charter." Siemens v. Shreeve, 317 Mo. 736, 296 S. W. 415, 1. c. 418.

■ The right to impose a license tax by the City of St. Louis is conferred upon it by Article XX of its Charter. This Article does not use the words "public mover," but does use the words "public vehicle" and "public automobiles." We think it is unnecessary to decide if "public vehicle" and "public automobile" do include a public mover who uses an automobile truck to move household goods, for the reason that we think subdivision (c), Section 8395, R. S. (Mo.) 1939, does give the City power to levy an occupation tax upon a public mover who uses an automobile truck. The pertinent part of that Section reads:

"*Provided, however,* that municipalities may impose occupation taxes on the business of transporting passengers, freight and merchandise for hire carried on within their limits, and may measure such taxes by the number of motor vehicles engaged in such transportation; require operators of motor vehicles residing within their limits to submit to reasonable examinations and investigation as to their physical fitness and competency to operate motor vehicles, and to obtain a license to so operate such motor vehicles and pay a fee therefor of not more than fifty cents (50c) for two (2) years."

The above quoted section gives a city the right to impose occupation taxes ■ on the business of transporting freight for hire and may measure such taxes by the number of motor vehicles engaged in such transportation. This is exactly what Ordinance No. 42217 provides. It is contended by the petitioner that he moves household goods from one place to another in the City of St. Louis and that, therefore, he is not engaged in the transportation of freight. We do not agree with petitioner in his narrow and constrained construction of the word "freight." Freight is defined as the transportation of goods. [Webster's New International Dictionary.] Of course, the word "goods" would include household goods.

■ In his reply brief, petitioner says: "It will be noted that both the index of Chapter 45 and the title of Section 8395 merely entitle it 'LOCAL REGULATIONS,' yet under Subsection (c) thereof it purports to authorize occupation taxes, etc., which are not expressed in the title," and, therefore, that Section is unconstitutional because Article IV, Section 28, of the Missouri Constitution is violated.

The petitioner has evidently confused the catch words prefixed by the compiler of our Session Acts, which are not parts of the title in a constitution sense, [State ex inf. Crain v. Moore, 339 Mo. 492, 99 S. W. (2d) 17] with the title to the act found in Laws of Missouri, 1935, p. 294, which reads: "An act to repeal Section 7780, Article 1, Chapter 41, Revised Statutes of Missouri, 1929, relating

to motor vehicles and regulation thereof by municipalities, and to enact a new Section in lieu thereof to be known as Section 7780 relating to the same subject *and providing that municipalities may require the obtaining of licenses to operate such motor vehicles and pay a fee therefor.*" (Italics ours.) We believe the portion of the title in italics conforms to Section 28, Article IV, of our Constitution and the title does clearly express the power granted to municipalities by this section. Star Square Auto Supply Co. v. Gerk, 325 Mo. 968, 30 S. W. (2d) 447.

From what we have said, it follows that the City of St. Louis has the power to enact a license tax for the purpose of raising revenue. ▮ Ordinance No. 42217 provides that no person shall engage in the business of a public mover without first obtaining a license from the License Collector, but that no such license shall be issued until the applicant shall have obtained a certificate of convenience and necessity from the Board of Public Service. "In determining whether or not a certificate of convenience and necessity should be issued, the Board shall give reasonable consideration to the moving service being presently furnished, and shall give due consideration to the likelihood of the proposed service being permanent and continuous throughout twelve months of the year, and the effect which such proposed moving service may have upon other moving service being rendered. The Board shall also take into consideration in determining whether public convenience and necessity require the licensing of any vehicle or vehicles for which application may be made, whether the demands of the public require such proposed or additional moving service within the City of St. Louis, the financial responsibility of the applicant, the number, kind and type of equipment proposed, and such other relevant facts as the Board of Public Service may properly deem advisable or necessary. Provided, However, no vested right shall accrue to any certificate of convenience and necessity." Section 4, Ordinance No. 42217.

There are different attacks made upon this provision. Has the City the power to pass an ordinance with such provisions? To determine this question, we will look to the provisions of the Charter of the City of St. Louis; Article XIII, among other things, provides:

Section 1.

"There shall be a board of public service . . . "

Section 5.

"The board of public works shall have power:— . . .

"(b) To grant permits to occupy or use . . . highways, streets, alleys . . . and any such permits may be revoked by said board at will; but this power shall never be deemed to vest in said board the right to grant franchises.

"(c) To grant permits . . . in relation to any private business required by ordinance to have a permit as a condition of or in connection with its conduct or operation."

Article 1, Section 1, par. 14, of this Charter gives the City of St. Louis the power "To establish . . . streets, boulevards, . . . alleys . . . and to regulate the use thereof."

"No one has the inherent right to carry on his private business upon the public streets. It is not only the right, but the imperative duty, of the city to make and enforce such regulations covering the use of its streets, improved at large cost for the benefit of the public, as will be for the convenience and protection of the public. . . . The provisions of the ordinance relative to securing a certificate of convenience and necessity, and the information required to accompany the application therefor, are reasonable and wholesome, required for the intelligent and proper consideration of the commission in determining whether the convenience and necessity of the public required or justified the granting or refusing the certificate, and the discretion lodged in the commission in passing upon same is a proper, wholesome, and constitutional power given for the benefit and safety of the public and its exercise a duty owed to the public." Fletcher v. Bordelon, 56 S. W. (2d) (Texas) 313, l. c. 317. The Supreme Court of Illinois held a similar ordinance of the City of Chicago valid in the case of People ex rel. Johns v. Thompson, Mayor et al., 341 Ill. 166, 173 N. E. 137.

We have no hesitancy in ruling that the City has power to pass the ordinance in question. The ordinance in making the above requirements may be in part a police regulation, but it is also a revenue measure. Ex parte Andrews, 23 S. W. (2d) 95.

The petitioner contends that the powers conferred by the Ordinance upon the Board of Public Service to grant certificates of necessity and convenience and the requirements that the owner of a motor vehicle used by a public mover must carry liability and cargo insurance in the sums of $35,000 and $1,000 respectively, are discriminatory, unreasonable, and oppressive and were designed to create a monopoly and thereby deprives him of his property without due process of law, as guaranteed him under both the State and Federal Constitutions.

We have already ruled that no one has any inherent right to use streets or highways as a place of business. People ex rel. Johns v. Thompson, supra. The rule is that "the courts will not declare (an ordinance) unreasonable unless no difference of opinion can exist upon the question. A clear case must be made to authorize the courts to interfere on that ground." Wagner v. St. Louis, 284 Mo. 410, l. c. 417, 224 S. W. 413, 12 A. L. R. 495.

In ruling on a statute somewhat similar to the ordinance in question, the Supreme Court of the United States in the case of Packard

v. Banton, 264 U. S. 140, 44 S. Ct. 257, 259, 68 L. Ed. 596, said: "The streets belong to the public and are primarily for the use of the public in the ordinary way. Their use for the purposes of gain is special and extraordinary and, generally at least, may be prohibited or conditioned as the Legislature deems proper. . . . It is asserted that the requirements of the statute are so burdensome as to amount to confiscation and, therefore, to result in depriving appellant of his property without due process of law. . . . The fact that, because of circumstances peculiar to him, appellant may be unable to comply with the requirement as to security without assuming a burden greater than that generally borne, or excessive in itself, does not militate against the constitutionality of the statute. Moreover, a distinction must be observed between the regulation of an activity which may be engaged in as a matter of right and one carried on by government sufferance or permission. In the latter case the power to exclude altogether generally includes the lesser power to condition and may justify a degree of regulation not admissible in the former."

It may be that this petitioner is financially unable to comply with the provisions of this ordinance, but that would not deprive him of his property without due process of law. He has no inherent right to engage in such business. We discover, however, nothing oppressive in the ordinance which imposes the same burden on all who pursue the same occupation, as must be confessed in the case here. St. Louis v. Weitzel, 130 Mo. 600, 31 S. W. 1045.

Nor does the ordinance in question delegate unregulated discretion to the Board of Public Service. A city council may authorize others to do things which it might properly, but cannot understandingly or advantageously do. People ex rel. Johns v. Thompson, supra; Fletcher v. Bordelon, supra. It is true this Ordinance does empower the Board of Public Service in general terms to ascertain if the applicant comes within its specifications, but it is not a delegation of legislative authority. Ex parte Williams, 345 Mo. 1121, 139 S. W. (2d) 485; Ballentine v. Nester, 350 Mo. 58, 164 S. W. (2d) 378. Nor does this Ordinance delegate the taxing power to the Board of Public Service. The provisions as to how the application for a certificate of convenience and necessity is a matter of detail and similar provisions have been held valid. St. Louis v. Weitzel, supra; Ex parte Williams, supra.

Petitioner contends Section 1 of the Ordinance arbitrarily creates two classes of household goods, crated and uncrated, and is, therefore, unconstitutional because it is in violation of Section 53, Subsection 32, Art. IV, of our State Constitution. That constitutional inhibition reads:

"Where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made

applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject.''

This provision applies to city ordinances. City of Springfield v. Smith, 322 Mo. 1129, 19 S. W. (2d) 1. Acts of a city council are presumed to be valid until the contrary is clearly shown. ''In case of doubt, every possible presumption, not directly and clearly inconsistent with the language and subject-matter, is to be made in favor of the Constitutionability of the Act.'' Hamman v. Central Coal & Coke Co., 156 Mo. 232, l. c. 242, 56 S. W. 1091.

If a statute or ordinance includes all who are similarly situated and there is a reasonable basis for the classification, the statute or ordinance must stand. If there is no reasonable basis for the classification, the law must fall. State ex inf. Barrett, Atty. Gen. v. Hedrick, 294 Mo. 21, 241 S. W. 402; State ex rel. Daily Record Co. v. Hartmann et al., 299 Mo. 410, 253 S. W. 991.

''Whether the ordinance is a police regulation or a revenue measure, it cannot be arbitrary and discriminatory. If the former, it would be unconstitutional under subsection 32, Sec. 53, Art. IV of the State Constitution, City of Springfield v. Smith, 322 Mo. 1129, 19 S. W. (2d) 1; also under the Fourteenth Amendment and Sec. 30, Art. II, of the State Constitution; Glencoe Lime & Cement Co. v. St. Louis, 341 Mo. 689, 696, 108 S. W. (2d) 143, 146 (5). As a revenue measure, it must be uniform in its operation. Section 3, Art. X, Constitution of Mo.; State v. Hallenberg-Wagner Motor Co., 341 Mo. 771, 778 (4), 108 S. W. (2d) 398, 402 (8). We have discussed and decided the question stated in the preceding two paragraphs because the latitude allowed a legislative body in making classifications in a pure revenue measure is more restricted, since the element of regulating particular businesses because of their nature is missing.'' Edmonds et al. v. City of St. Louis et al., 348 Mo. 1063, 156 S. W. (2d) 619, l. c. 623.

We have already ruled that though the Ordinance is not a purely revenue measure, it has some features of a regulation under the city police power.

With the principles of law just announced, we will examine this Ordinance and see if there is any reasonable basis for its classification. This Ordinance applies only to movers who move uncrated household goods. It was enacted to protect a family who move their household goods from one address in the City of St. Louis to another. It may have been that the Board of Aldermen thought crated furniture is less apt to be scratched and broken than uncrated furniture, or that if continued and well-founded complaints of carelessness, incompetence, arbitrary or dishonest retention of the customer's household goods until the customer complies with unconscionable demands are lodged against a public mover, there is a greater need for summary means of revoking his permit to engage in the business of a public

mover than exists in the instances of like abuses on the part of a transfer business that moves crated freight.

The Ordinance before this court in Wagner Moving Co. v. St. Louis, 284 Mo. 410, 224 S. W. 413, was held valid, although its terms did include only haulers of furniture, household goods, and what might be termed "personal belongings."

We hold that there is a reasonable classification between a mover of uncrated household goods and a mover of crated articles of freight.

This Ordinance excludes haulers who use horse-drawn vehicles, which, of course, are not as dangerous as motor vehicles. The public safety permits such classification. The Ordinance does include all movers of household goods that use motor vehicles. It is, therefore, not special legislation.

The Ordinance includes those who move uncrated household goods without compensation. The petitioner moves for ▌ hire; he did not move household goods without compensation; and he is not affected by that provision. He must be affected before he can raise such a question. State ex rel. Crandall v. McIntosh, 205 Mo. 589, 103 S. W. 1078; Ballentine v. Nester, supra.

Petitioner next contends that the "certificate of convenience and necessity" granted by the Board of Public Service is a franchise. Article XIII, Section 5, par. (b), of the Charter of the City of St. Louis, already quoted, prohibits this Board from granting franchises.

We do not think the permit, which is revocable, is a franchise; it is a privilege, or license. This, for the reason there is nothing found in the Ordinance granting a use of the streets inconsistent with the right to travel or with the rights of abutting property owners. It does not vest any exclusive privilege or limit the power over the control of the streets. In fact, it confers no privilege or immunity of a public nature to "movers of household goods," but, as applied to them, is restrictive in preventing them from conducting their business in the streets, a privilege they might legally exercise except for the intervention of the law-making power of the City. We are impressed with the view that the right sanctioned by the Ordinance is wanting in the essentials of a franchise, but that it is a license or privilege. Ex parte Polite, 97 Texas Cr. 720, 260 S. W. 1048.

The petitioner next contends that "The municipal assembly has no authority to enact an ordinance imposing license tax on motor vehicles, other than those provided for by Section 8369 (c), R. S. Mo. 1939." Section 8369 (c) confers upon a municipality the right to collect a license tax from every owner of a motor vehicle who resides within the particular municipality and uses his motor vehicle within the municipality—for any purpose, whether for business or pleasure. We have already ruled that the occupation tax for conducting the petitioner's business was authorized by Section 8395, supra. This exact question was ruled adversely to petitioner in our case of

Ex parte Andrews, supra. The City of St. Louis may levy a tax (1) on property, (2) on vehicles using the streets, and (3) on the business or occupation. St. Louis v. Weitzel, supra.

██ Petitioner, also, contends that "Section 12 of the Ordinance is in the disjunctive. It provides for alternate methods to obtain a license and is, therefore, ambiguous and conflicts with Section 3 thereof."

Section 12 of the Ordinance reads:

"It shall be unlawful for any person, firm or corporation to move uncrated household goods and furniture, office furniture and fixtures, or store furniture and fixtures by vehicle in the City of St. Louis unless the vehicle being used has been duly licensed by the proper state authority for automobile registration in the name of the person, firm or corporation so engaged in moving, and said ownership is duly evidenced by the Certificate of Title in said person, firm or corporation's name *or* said vehicle has been duly licensed in accordance with the terms and provisions of this ordinance." (Italics ours.)

When the remaining sections of Ordinance 42217 are read, it becomes apparent that it was the intention of the Board of Aldermen to make it unlawful for any person to engage in the business of a public mover unless the vehicles used in conducting the business were registered with the State in the name of the mover, that he possess a certificate of title showing his ownership, *and* unless he had also complied with the requirements of Ordinance 42217.

"The word *or* in statutes or documents is frequently interpreted to mean *and*, and this interpretation is given to it whenever required to carry out the plain purpose of the act or contract and when to adopt the literal meaning would defeat the purpose or lead to an absurd result." State ex rel. Stinger v. Krueger, 280 Mo. 293, l. c. 309, 217 S. W. 310. Also, see St. Louis v. Murta, 283 Mo. 77, 222 S. W. 430.

The laws of this State have long required all motor vehicles to be registered with the Secretary of State, and have provided for the issuance of a certificate of title indicating who is the owner of the motor vehicle described therein. Nothing could be more absurd than to say the Board of Aldermen would enact an ordinance imposing the above mentioned requirements upon every person who desired to engage in the business of a public mover, and then at the same time, it could have intended to permit him to engage in that business without complying with the ordinance if he registered his motor vehicles and procured a certificate of title as provided for by the State law. We hold that the word "or" in question should be construed to mean ██ "and" in order for the true intent of the Board of Aldermen to be carried out.

Having already held that this Ordinance is not purely a revenue measure, but that some of its provisions are police regulations, we have probably unduly lengthened this opinion in view of petitioner's

admission in his answer brief to respondent's supplemental brief wherein he said: "We do not question the City's power to impose a regulatory license tax under its police powers." But on account of the importance of this Ordinance, we have ruled on the point made by the petitioner in the original brief.

From what we have said, it follows that this Ordinance is valid and the petitioner should be remanded to the custody of the City Marshal of the City of St. Louis. It is so ordered. All concur except *Gantt, J.,* absent.